Ulysee **BARRON**, III, SSN: 263–06–9928, **Plaintiff–Appellant,**

v.

Louis W. **SULLIVAN**, Secretary of Health and Human Services, **Defendant–Appellee.**

**No. 90–8095.**

United States Court of Appeals, Eleventh Circuit.

Feb. 21, 1991.

men, James L. Cromartie, Jr., Atlanta, Ga., for plaintiff-appellant.

Lillian H. Lockary, Asst. U.S. Atty., Macon, Ga., Bruce R. Granger, Michael S. Feinstein, Mack A. Davis, Mary Ann Sloan, Holly A. Grimes, Dept. of HHS, Office of General Counsel, Atlanta, Ga., for defendant-appellee.

Before COX, Circuit Judge, and HILL * and GIBSON **, Senior Circuit Judges.

FLOYD R. GIBSON, Senior Circuit Judge:

Social Security claimant Barron appeals the denial of his request for disability benefits. Concluding that substantial evidence supports the decisions of the ALJ and the magistrate judge [1], we affirm.

## I. BACKGROUND

Barron was born on April 10, 1948. He had polio as a child and as a result now suffers from a diminished left leg and, perhaps, from the late effects of polio.[2] He also has difficulties arising from a gunshot wound to the diminished leg and from work-related, tar-burn injuries. Some permanent scars remain from the burn injuries, though some successful skin grafts were performed. Barron also has an ulnar neuropathy in his left arm. While the record reflects a fourth grade education,

Betty Walker–Lanier, Tifton, Ga., Rachael Henderson, Waycross, Ga., Phyllis Hol-

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

1. The Honorable Claude W. Hicks, Jr., United States Magistrate Judge. By section 321 of the Judicial Improvements Act of 1990, Congress has said that United States magistrates are now to be referred to as United States magistrate judges. Pub.L. No. 101–650, § 321 (December 1, 1990).

2. The late effects of polio are described by the Secretary in the Program Operations Manual System (POMS) as follows:

> For the purposes of evaluation under the disability programs, the late effects of polio refer to new symptoms and neuromuscular manifestations which result in new functional loss in an individual with a prior history of acute polio. This functional loss typically occurs after a long period (more than 10 years and generally 20–40 years) of stability.
>
> The etiology of these problems is not yet known and not all polio survivors experience these late effects. Precise data are not yet available, but it may be that about 25 percent of the estimated 300,000 or more surviving individuals who had polio are experiencing new problems affecting their ability to carry out accustomed activities. These late neuromuscular effects are permanent and usually slowly progressive. There is no known treatment.

POMS § DI 24580.010.A2. The late effects of polio are also called post-polio syndrome. We use the two phrases interchangeably.

Barron is illiterate and can scarcely sign his own name.

Barron last held gainful employment in 1985. His application for disability benefits was made in January 1987. After denial at the administrative levels, he obtained an ALJ hearing. The ALJ concluded that Barron had severe impairments but that they did not meet or equal a listed impairment. Further, the ALJ concluded that Barron retained the residual functional capacity to perform sedentary work that existed in the local and national economy.

The Appeals Council denied review, and the decision of the ALJ became the final decision of the Secretary. By consent the parties submitted the case for judicial review before a magistrate judge who affirmed denial by the Secretary. Barron appeals.

## II. DISCUSSION

Barron's appeal challenges the ALJ's conclusion that Barron's affliction with post-polio syndrome alone, or combined with his other ailments, did not meet or equal a listed impairment. This conclusion came at step three of the five-step sequential process that the ALJ was required to follow. The burden was Barron's to show that his impairments combined to meet or equal a listed impairment in Appendix 1 of Subpart P—in particular, section 11.11 on anterior poliomyelitis. *See McSwain v. Bowen,* 814 F.2d 617, 619 (11th Cir.1987) (per curiam).

Section 11.11 is short and straightforward; it reads:

11.11 *Anterior poliomyelitis.* With:

A. Persistent difficulty with swallowing or breathing; or

B. Unintelligible speech; or

C. Disorganization of motor function as described in 11.04B.

20 C.F.R. Part 404, Subpt. P, App. 1 § 11.11 (1989). The description from section 11.04B is "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterious movements, or gait and station (see 11.00C)." *Id.* at

§ 11.04B. Section 11.00C describes "persistent disorganization of motor function" and concludes that "[t]he assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms." *Id.* at § 11.00C.

■ The Secretary has also issued guidelines specifically dealing with post-polio syndrome in POMS.

### D. Evaluation

#### 1. MEETING OR EQUALING THE LISTING

The listing criteria for polio (11.11) may be applied both to cases of static polio (where there has been no reported worsening after initial recovery), and cases where late effects of polio [post-polio syndrome] are manifested. Evaluation of the overall impairment severity is the primary consideration. It is possible to meet or equal Listing 11.11 on the basis of the late effects of polio even though medical science has not yet fully defined the etiology of these late effects.

#### 2. RESIDUAL FUNCTIONAL CAPACITY

In determining RFC when Listing 11.-11 is neither met nor equaled, the guides in DI 24510.000ff. should be followed. Careful consideration should be given to all factors, particularly those factors critical to determining functional status in postpolio cases (see E–H below).

POMS § DI 24580.010.D. Sections E–H cover fatigue and loss of endurance, weakness, pain, and cold intolerance. DI 24580.-010 should be used to determine whether the post-polio syndrome of a claimant, alone or combined with other impairments, rises to meet or equal Listing 11.11.

■ The POMS directives are useful in considering the unique situation presented in post-polio cases, but the impairment that must be demonstrably met or equaled remains one listed in Appendix 1 to Subpart P. The facts and the law meet under the Listings, not under POMS. Our review cannot be an independent foray into the record; rather, we must determine only if substantial evidence supports the findings

of the ALJ.[3] *See Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir.1987) (per curiam). Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned.

The ALJ's finding was "that the claimant has severe status post childhood polio and status post burn injuries, but that be [sic] does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4." Decision of the ALJ at 6, Court Transcript at 15. Substantial evidence supports this conclusion.[4]

Our analysis of the findings of the ALJ with respect to Barron's RFC and the Secretary's proof of the existence of jobs in the economy that Barron can perform is like our analysis of the findings on impairments described above. While POMS provides particular guidance for the determination of RFC for post-polio victims and while the ALJ does not reference those particular guidelines, we conclude that substantial evidence supports his finding that Barron has the RFC to do sedentary work which exists in the local and national economy.

## III. CONCLUSION

We have considered the remaining arguments of Barron with respect to his non-exertional impairments, the vocational expert's testimony, the ALJ's use of the grids, and the state of the record and have determined that they are without merit. Because substantial evidence supports the findings of the ALJ made under the sequential process, the order of the magistrate judge affirming the Secretary's denial of disability benefits to Barron is

AFFIRMED.

---

3. We note that it would be helpful to appellate courts if the ALJ would specifically tie his findings to particular listings that the claimant has argued. And in cases of post-polio syndrome, it would be a further aid to reviewing courts if the ALJ would refer to the POMS guidelines with respect to the late effects of polio. In this case, we are confident that the evidence supports the conclusions of the ALJ, despite the lack of any particular discussion of Barron's post-polio impairment as it relates to Listing 11.11, because "[e]valuation of the overall impairment severity is the primary consideration." POMS § DI 24580.010.D1. The record supports the conclusion that Barron's overall post-polio impairment, singly or combined, does not meet Listing 11.11.

4. As the POMS guidelines point out, post-polio syndrome is "slowly progressive." Thus, while the record as it stood at the time of Barron's hearing in 1987 did not support a finding that he suffered from the late effects of polio to the degree necessary to meet or equal Listing 11.11, he might do so later. Provided he meets the other eligibility requirements, he would then be entitled to disability benefits.