[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 3, 2008
THOMAS K. KAHN
CLERK

No. 07-14389
Non-Argument Calendar
_____

D. C. Docket No. 05-00193-CV-CAR-5

GLENDA DENISE BROWN,

Plaintiff-Appellant,

versus

MICHAEL J. ASTRUE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(June 3, 2008)**

Before CARNES, BARKETT and MARCUS, Circuit Judges.

PER CURIAM:

Glenda Denise Brown, proceeding pro se, appeals the district court's order affirming the denial of her application for social security disability benefits, filed pursuant to 42 U.S.C. § 405(g). On appeal, Brown argues the administrative law judge ("ALJ") erred (1) by finding that her mental and physical impairments did

not meet the disability requirements found in the Listings of 20 C.F.R. § 404, appendix 1, subpart P ("Listings"); (2) by refusing to give her treating physician controlling weight; and (3) by concluding that she had the residual functional capacity ("RFC") to perform light, sedentary work. Because the denial of benefits was supported by substantial evidence and the ALJ applied the correct legal standards, we affirm.

We review a social security case to determine whether the ALJ's decision is supported by substantial evidence and whether the correct legal standards were applied. See Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982) (quotation omitted); see also Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) ("Substantial evidence is defined as more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion.") (citation omitted). We may not reweigh the evidence or substitute our own judgment for that of the ALJ, even if we find that the evidence preponderates against the ALJ's decision. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).

The relevant facts are these. On March 26, 2001, Brown applied for disability insurance benefits, alleging a disability onset date of August 1, 2000. She listed loss of hearing in both ears, anemia, migraine headaches, diabetes and hypertension as conditions forcing her to discontinue work. The Commissioner denied Brown's claim both initially and on reconsideration. Brown requested, and was granted, a hearing before an ALJ.

Brown was 44 years' old at the time of the hearing and, for the previous fifteen years, had held the position of data processor and legal secretary. She contended that her medical conditions prevented her from holding down a job, especially due to her inability to hear and the fact that she passed out. Brown testified that she was undergoing therapy at Middle Flint hospital for depression and that depression also may have been involved in her inability to work.

In response to the ALJ's question about why she stopped working, Brown said that her two children, both of whom were receiving supplemental security income, were disabled and she had to take care of them. The ALJ also asked about her various conditions. Brown described the following conditions: (1) she had been depressed for a couple of years; (2) she took three different pills for her diabetes and the medication sometimes made her very weak and could cause her to pass out; (3) she was taking medication for her high blood pressure; (4) she could

not hear well; (5) she had chronic lower back pain that resulted in her having difficulty walking or even getting out of bed; and (6) she tried to "eat right" in order to keep her blood count up but she still had low energy due to her anemia.

Brown also submitted various medical records to support her claim. Specifically, a February 15, 2001 evaluation by Dr. Ralph St. Luce, a hearing specialist, showed that Brown was advised to get hearing aids in both ears. The technician testing Brown determined that she had moderate sensorineural loss in both her right and left ear and that this type of loss could be helped by hearing aids.

In a progress report from an unknown source, dated March 23, 2001, the examiner noted that Brown had complained of lower back pain for the past few weeks. Brown was unable to bend and the pain sometimes radiated to the front of her legs. Ibuprofen was recommended for the pain and she was instructed to return in two weeks.

In an evaluation conducted by Dr. Luis Diaz-Secades on June 18, 2001 for the State of Florida Department of Labor and Employment Security Office of Disability Determinations, Dr. Diaz-Secades found Brown alert, oriented, and pleasant. He found a normal affect, no hallucinations or delusions, Brown was not suicidal, her memory was intact, and she had normal calculation and cognitive

functions. Dr. Diaz-Secades diagnosed Brown with mild diabetes mellitus, hypertension, bilateral hearing loss, morbid obesity, and chronic anemia.

In an RFC assessment dated June 26, 2001, Dr. Robert Auston found that Brown was capable of lifting up to 50 pounds occasionally and 25 pounds frequently, that she could stand or walk for about 6 hours in an 8-hour workday, that she could sit for about 6 hours, and that she had unlimited ability to push and pull. He found that Brown could not hear normal tones of conversation on her own, but opined that there were minimal findings to support Brown's allegations of disability and that she was capable of functioning.

In a second RFC assessment, this one dated September 10, 2001, Dr. Diane Muth found that Brown had mild hearing loss and recommended two hearing aids.

Dr. Loay Salman was Brown's treating physician. Dr. Salman treated Brown for a number of her ailments between December 11, 2002 and March 29, 2004, including hypertension, asthma, anxiety, bronchitis, high cholesterol, diabetes mellitus, and leg, shoulder, and lower back pain. In his notes, Dr. Salman found that Brown's hypertension was under control, although it had been elevated in May 2003. He also noted that her anxiety and asthma were stable and she needed diet and exercise for her diabetes. Dr. Salman had prescribed Zoloft and Prozac for Brown's depression.

The Middle Flint Behavioral Health Center admitted Brown for therapy for her psychological problems and conducted an entrance evaluation on March 22, 2004. Brown was diagnosed with major depressive disorder, generalized anxiety disorder, and diabetes. Brown subsequently was referred to Dr. John C. Whitley, a licensed psychologist, for evaluation by the Georgia Department of Human Resources Disability Adjudication Section on May 24, 2004.

Dr. Whitley found that Brown was literate, capable of following directions, able to organize her daily activities and care for herself, capable of bathing and dressing appropriately, capable of cooking, able to drive and shop, able to care for her home without assistance, perform all aspects of house and yard work with frequent rest breaks, and care for her children. Dr. Whitley described Brown's daily routine as consisting of getting up at 5:00 A.M., preparing breakfast for her children and assisting them with getting ready for school, watching television, cooking, cleaning and shopping. Dr. Whitley found that Brown had a normal affect with a mildly sad mood, her memory was grossly intact but her concentration somewhat impaired, her thought processing was normal and rational, she demonstrated fair insight, judgment and impulse control, she had no suicidal or homicidal ideation, and she had cooperated adequately with the evaluation. He diagnosed her with mood disorder due to general dysthymic disorder (chronic

depression) and found that she had moderate stressors due to her medical and family stress. Notably, Dr. Whitley opined that Brown was limited in her ability to work but not precluded.

After reviewing the foregoing medical evidence and hearing Brown's testimony, which he found to be not credible, the ALJ concluded that Brown was not disabled. The ALJ found that Brown's disability insured status expired on March 31, 2003, and that Brown was not engaged in substantial gainful activity since her alleged onset date. The ALJ determined that Brown had the following impairments: non-insulin dependent diabetes mellitus, hypertension, bilateral hearing loss, morbid obesity, chronic anemia, major depressive disorder, generalized anxiety disorder, and asthma. The ALJ, however, also found that none of these impairments were severe enough to meet singly, or in combination, one of the impairments listed in the regulations or to prevent her from working.[1]

---

[1] More specifically, the ALJ found that Brown's diabetes, hypertension, and asthma were controlled and stabilized by her medication, with the only side effect being weakness. The ALJ found that Brown's hearing was significantly impaired resulting in difficulty with conversational speech, and while she had chosen not to wear hearing aids, those would improve her speech discrimination to 96% of normal levels. Although Brown had depression and generalized anxiety disorder, her treating physician had prescribed Zoloft and Prozac for her depression. The ALJ found that Brown had not demonstrated that her depression and anxiety disorder resulted in an extended duration of marked restriction on daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration persistence or pace, nor repeated episodes of decompensation.

7

The ALJ then assessed Brown's RFC, and found that Brown's testimony was not credible as to the severity of her physical or mental impairments. Although she had numerous medical problems, all the record medical evidence showed that they could be stabilized through medication, and other than her obesity, she was "normal." The ALJ highlighted that Brown had not complained of depression at the consultative examination conducted by Dr. Diaz-Secades, and that Dr. Whitley believed that she was able to take care of her daily activities and her two special needs children at home. The ALJ concluded that none of Brown's impairments met the criteria of the Disability Listings in 20 C.F.R. § 404, appendix 1, subpart P, that Brown could perform a full range of light exertional work activities, including her past work as a secretary, and, therefore, that she was not disabled on or before expiration of her insured status on March 31, 2003.

After the Appeals Council denied her request for review, Brown filed a <u>pro se</u> petition for judicial review in the district court. The district court affirmed the denial of benefits. This appeal followed.

To establish the existence of a disability, the claimant must show that: (1) she is not engaged in substantial gainful activity; (2) she has a severe impairment or combination of impairments; and (3) her impairment or impairments meets or exceeds the criteria in the Listings. <u>Jones v. Apfel</u>, 190 F.3d 1224, 1228

(11th Cir. 1994).  The claimant has the burden of proving that an impairment meets

or equals a listed impairment.  Barron v. Sullivan, 924 F.2d 227, 229 (11th Cir.

1991).

The ALJ found that Brown had not shown that any of her impairments met

the applicable Listings.[2]  From our review of the record, substantial evidence

supports the ALJ's conclusion.  Although Brown's evidence certainly establishes

that she has several impairments, it does not show that her impairments "met" the

---

[2]For example, an affective disorder characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome, meets the listed severity level when there is a depressive syndrome and it results in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of an extended duration.  20 C.F.R Part 404, Subpart P, Appendix 1 § 12.04; see also 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.06 (Listing relating to anxiety disorders, severity of which must result in generalized persistent anxiety, irrational fear, recurrent panic attacks, obsession, or compulsion or intrusive recollections of traumatic experiences, and a complete inability to function outside the home or two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of an extended duration).

Diabetes mellitus meets the applicable Listing when there is neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements (tingling in the arms or legs that interferes with movement) or gait and station, acidosis occurring at least on the average of once every 2 months documented by appropriate blood chemical tests, or retinitis proliferans (significant visual impairment).  20 C.F.R. Part 404, Subpart P, Appendix 1 § 9.08; see also 20 C.F.R. Part 404, Subpart P, Appendix 1 § 7.02 (anemia meets the Listings when hematocrit persists at 30 percent or less due to any cause and is accompanied by one or more blood transfusions on an average of a least once every two months or evaluation of the resulting impairment under criteria for the affected body system); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 4.00(H)(1) (hypertension); 20 C.F.R. Part 404, Subpart A Appendix 1 §§ 3.02(A) (chronic pulmonary insufficiency) and 3.03 (asthma); 20 C.F.R. Part 404, Subpart A, Appendix 1 § 2.08 (hearing loss).

applicable Listings, all of which the ALJ individually identified and analyzed. Accordingly, she has not shown reversible error in the ALJ's analysis of her impairments.

We likewise are unpersuaded by Brown's argument that the ALJ erred by not giving her treating physician's opinion controlling weight as to her depression and anxiety. It is well-established that "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Lewis, 125 F.3d at 1440.

Here, the ALJ accorded great weight to the opinion of Brown's treating physician, Dr. Salman. The ALJ noted that Dr. Salman had diagnosed Brown with depression and anxiety, and had prescribed Zoloft and Prozac for these conditions. Dr. Salman, however, did not make any statements about Brown's ability to work. The only remarks about her condition were that the medications were stabilizing her problems and that diet and exercise were recommended for her diabetes. The ALJ accepted Dr. Salman's opinion that Brown's condition had stabilized medicinally. Accordingly, we find no error in the ALJ's analysis of Dr. Salman's opinion.

Finally, Brown argues the ALJ erred by discrediting her testimony and concluding that she had the residual functional capacity to perform light, sedentary

10

work, or return to her past relevant work. When a claimant attempts to establish disability through her own testimony concerning pain or other subjective symptoms, we apply a three-part "pain standard," which requires "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). The ALJ must explicitly and adequately articulate his reasons if he discredits subjective testimony. Id. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." Foote, 67 F.3d at 1562.

While the various pieces of medical evidence presented by Brown as supporting her claim for disability benefits show an underlying medical condition, Brown presented no evidence to demonstrate that her symptoms prevented her from working. Notably, none of the doctors examining Brown found that her medical problems would prevent her from working. Simply put, because no objective medical evidence confirmed the severity of her contentions, the ALJ properly discredited her testimony. Accordingly, we affirm.

**AFFIRMED.**

11