[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-11137
Non-Argument Calendar

_____

D.C. Docket No. 3:11-cv-01129-MMH-JRK


HAYWOOD ARMSTRONG,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 3, 2013)

Before TJOFLAT, PRYOR, and FAY, Circuit Judges.

PER CURIAM:

Haywood Armstrong, proceeding *in forma pauperis*, appeals the district

court's order affirming the Social Security Administration's denial of his

applications for disability insurance benefits and supplemental security income.

Armstrong argues, at step three of the sequential evaluation process, the

Administrative Law Judge ("ALJ") failed to consider adequately whether he met

the requirements of Listing 14.09C, which applies to his condition of ankylosing

spondylitis ("AS"), chronic spinal arthritis.  We vacate and remand for further

proceedings.

## I.

On February 14, 2007, Armstrong filed concurrent applications for disability

insurance benefits and supplemental security income, pursuant to Titles II and XVI

of the Social Security Act ("SSA").  In his applications, Armstrong alleged he was

disabled because of an unspecified condition with an onset date of July 5, 2006.

His applications were denied initially and upon reconsideration.  Armstrong

requested and was granted an administrative hearing before an ALJ.

At the hearing on January 11, 2010, Armstrong and a vocational expert

("VE") testified.  Armstrong testified he had received medical treatment from the

Department of Veterans Affairs ("VA") in the past, and he discussed the symptoms

he experiences from his AS, which he described as "a rheumatoid disease" that

affects all of his joints.  During the hearing, Armstrong's representative asked the

ALJ whether, in light of the lack of recent documentation, a physician could

review Armstrong's file and determine his residual functional capacity ("RFC")

2

and whether he met the requirements of Listing 14.09. Because Armstrong had been evaluated by Dr. Robert Dehgan and Dr. Afzal Kahn within the past year, the ALJ determined another medical opinion was unnecessary. The representative reasserted he would like a medical opinion for the record regarding whether Armstrong met Listing 14.09; the ALJ responded both Dr. Kahn and Dr. Dehgan already had opined Armstrong could "do sit, stand work." The ALJ declined to obtain the requested updated opinion, because Armstrong's VA records did not suggest his AS was severe enough to meet a listing. If a claimant meets a listing, the representative noted the ALJ need not proceed to the next step to evaluate his ability to work. The ALJ responded she had already proceeded to the next level and, even if an expert were to state Armstrong met a listing, the record contained contradictory evidence regarding the severity of his AS.

The ALJ then asked the VE three hypothetical questions. Based on those questions, the VE stated Armstrong would be unable to perform his past relevant work as a forklift operator. The VE testified, however, there were a substantial number of jobs in the national economy and in Florida that would be available to someone with his limitations. Further, the VE testified each of these jobs would allow for a "sit, stand option."

In addition to the hearing testimony, the ALJ also considered Armstrong's VA medical records from 2005 to 2007, which documented his AS diagnosis and

3

related symptoms.  The records showed an x-ray of Armstrong's spine was taken in 2005, and a computed tomography scan ("CT scan") was taken of his spine in 2007, after he reported falling backwards out of a chair.  The record also contained Dr. Kahn's and Dr. Dehgan's reports related to their evaluations of Armstrong.  Additionally, Dr. Kahn and a state medical consultant completed RFC assessments for the Social Security Administration.

On August 11, 2009, prior to Armstrong's hearing, the ALJ sent his representative a letter with a section titled "Actions You Have A Right To Take."  Among other things, the letter stated Armstrong could submit written questions to the authors of his medical reports.  On August 23, 2009, Armstrong's representative, sent a letter to the ALJ with proposed interrogatories for Dr. Dehgan.  Among other things, the proposed interrogatories asked Dr. Dehgan, to review Listing 14.09 and to indicate whether Armstrong's impairments met or medically equaled that listing's requirements.  Finding the questions were unnecessary, the ALJ denied Armstrong's request to submit the interrogatories.  The ALJ stated Dr. Dehgan had indicated in his notes that Armstrong was capable of working, and "therefore [Dr. Dehgan] did not find that [Armstrong] met a listing."

On February 5, 2010, the ALJ issued a written decision and found Armstrong was not disabled under the SSA.  The ALJ found Armstrong met the

insured status requirements of the SSA, he had not engaged in gainful activity since July 5, 2006, and he had the following severe impairment: "[AS]/arthritis of the spine." Although Armstrong had testified that he was unable to work because of depression, his mental impairment of depression was not severe. Further, Armstrong did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Specifically, the ALJ stated, "[d]espite [Armstrong's] combined impairments, the medical evidence does not document listing level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listing, individually or in combination." After careful consideration of the entire record, the ALJ found Armstrong had the RFC to perform sedentary to light work. Armstrong, however, must be able to shift positions from sitting, standing, and walking. While Armstrong was unable to perform his past relevant work, he could perform a significant number of jobs in the national economy. Additionally, the VE's testimony also established Armstrong could perform various light or sedentary, unskilled work with a "sit/stand" option. In sum, the ALJ found Armstrong was not disabled, as defined by the SSA, from July 5, 2006, through the date of her decision.

The Appeals Council denied Armstrong's request for review, and Armstrong sought review of the ALJ's decision in district court. The magistrate judge issued

a report and recommendation that the district court affirm the Commissioner's decision. Over Armstrong's objections, the district court adopted the recommendation and affirmed the decision.

## II.

We review the Commissioner's decision for substantial evidence and to ensure that the decision was "based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Id.* When the ALJ fails to "state with at least some measure of clarity the grounds for his decision," we will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Id.* at 1179 (citation and internal quotation marks omitted).

The Commissioner uses

a five-step, sequential evaluation process . . . to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on [the RFC] assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers

6

of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Id.* at 1178.  At step three of the sequential evaluation process, the claimant bears the burden of proving that he meets or equals a listed impairment.  *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).  If the claimant meets or medically equals a listed impairment, then the claimant is conclusively presumed disabled and, if not, the process moves to the fourth step.  20 C.F.R. § 416.920(d); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

If the claimant has a severe impairment that does not meet or equal a listed impairment, then the ALJ must evaluate the claimant's RFC before continuing to steps four and five.  *See* 20 C.F.R. § 416.920(e), (f).  RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  At step four, the RFC is used to determine whether the claimant can perform his past relevant work.  20 C.F.R. § 416.920(e), (f); *see also Winschel*, 631 F.3d at 1178.  Finally, if the claimant cannot perform his past relevant work, the ALJ must then determine at step five whether the claimant can perform other work that exists in the national economy.  20 C.F.R. § 416.920(g); *see also Winschel*, 631 F.3d at 1178.

If the claimant contends that he has an impairment that equals a listed impairment, the claimant must present evidence that describes how the impairment

7

has such an equivalency. *Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987). "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002); *see also* 20 C.F.R. § 404.1525. "To 'equal' a listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson*, 284 F.3d at 1224 (quoting 20 C.F.R. § 404.1526(a)). Finally, the listing requirements for AS, which are included in 20 C.F.R. § 404, Subpart P, Appendix 1 at § 14.09C, provide that a claimant with a condition of AS must establish:

1. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 45° or more of flexion from the vertical position (zero degrees); or

2. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity.

As an initial matter, the Commissioner argues Armstrong waived his arguments—the ALJ improperly speculated regarding certain medical opinion and the record lacked medically acceptable imaging required by Listing 14.09C—by failing to raise them in the district court. A review of the record shows Armstrong

8

raised his improper speculation argument before the district court, but he did not discuss specifically whether the record contained medically acceptable imaging of his back.  Therefore, we decline to address the latter argument.  *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (explaining that, as a general principle, when a claimant fails to raise an issue in district court, we may decline to address it).  Regardless, Armstrong preserved his primary argument that the ALJ failed to consider adequately whether he met the requirements of Listing 14.09C.

In this case, it is unclear whether the ALJ considered the requirements of Listing 14.09C at step three of the evaluation process.  In her decision, the ALJ stated only Armstrong does not have an impairment or combination of impairments that meets or medically equals any listing, because "no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listing." Although the ALJ found Armstrong's AS was a severe impairment, the ALJ did not discuss specifically Listing 14.09C, which applies to AS, and she did not explain what evidence showed Armstrong did not meet that listing.  Although Armstrong had the burden to establish he met the listing's requirements, the ALJ refused his request to submit interrogatories regarding that issue.  *See Barron*, 924 F.2d at 229.

Ultimately, the ALJ appeared to find that, because Armstrong had the RFC

9

to perform certain light or sedentary work, his AS was not severe enough to meet any listing. In denying Armstrong's request to submit interrogatories to Dr. Dehgan, the ALJ found it was unnecessary to question Dr. Dehgan about Listing 14.09C's requirements because he had concluded previously Armstrong could perform work. During the hearing, the ALJ further stated, even if an expert testified that Armstrong met a listing's requirements, Armstrong still could not establish he was disabled because he could perform "sit, stand work." The ALJ stated, if Armstrong had the ability to do such work, then she did not believe that any doctor would find he met the requirements of a listing. In making these findings, the ALJ failed to acknowledge, if Armstrong's AS met the requirements of Listing 14.09C, then he is conclusively presumed disabled regardless of his ability to work. *See* 20 C.F.R. § 416.920(d); *Bowen*, 482 U.S. at 141.

To determine whether Armstrong met the requirements of Listing 14.09C, it appears the ALJ would have needed to ascertain the angle of ankylosis or fixation of his spine, as shown by appropriate medically acceptable imaging. *See* 20 C.F.R. § 404, Subpart P, Appendix 1 at § 14.09C. At step three of the evaluation process, however, the ALJ provided no indication she had considered the degree, if any, to which Armstrong's spine is fixed at an angle. Although the record contained x-rays and a CT scan of Armstrong's spine, the ALJ denied Armstrong's request to solicit a medical opinion regarding whether his AS met the requirements of Listing

10

14.09C.  Therefore, we conclude it is unclear whether the ALJ applied the proper legal standards or whether her finding at step three was supported by substantial evidence.  *See Winschel*, 631 F.3d at 1178-79.

**VACATED AND REMANDED.**