[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-11532

Non-Argument Calendar

_____

GRETER ALVAREZ MARTIN,

Plaintiff-Appellant,

*versus*

ACTING COMMISSIONER OF SOCIAL SECURITY,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cv-23468-CMA

_____

Before BRANCH, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

Greter Alvarez Martin, through counsel, appeals the district court's order affirming the Social Security Administration ("SSA") Commissioner's decision denying her application for disability insurance benefits ("DIB") under 42 U.S.C. § 405(g). She raises three issues on appeal. First, she argues that the administrative law judge ("ALJ") failed to state with particularity the weight accorded the medical opinion evidence and failed to provide good cause for discounting the medical opinion evidence of her treating psychiatrist. Second, she argues that substantial evidence does not support the ALJ's residual functional capacity ("RFC") finding. Third, she asserts that substantial evidence does not support the ALJ's evaluation of her subjective complaints. After careful review, we affirm.

## I.    Background

In August 2015, Alvarez Martin applied for DIB, asserting that her depression, anxiety, mood disorder, sadness, loss of interest, and insomnia limited her ability to work, and that her disability started on August 27, 2014. She stated that she worked previously in accounting, but that she had stopped working because of the specified medical conditions. Along with the application, Alvarez Martin completed a function report, which stated the following. She lived in an efficiency with her minor

daughter and cared for her daughter. She could not sleep at night, even with medication, which caused her to be sleepy and tired during the day. She was "always" anxious, depressed, and had panic attacks. She tried to live "a regular life" and to care for her daughter, although her conditions sometimes made that difficult. She recently lost interest in how she looked or dressed and in self-grooming. She prepared meals daily, such as sandwiches, frozen dinners, and "sometimes easy meals"; cleaned and did laundry every week or every other week; did the grocery shopping in-store; but went outside "only when it [was] necessary." She confirmed that she could go out alone, could drive, pay bills, handled her bank accounts, but that she needed "more time" to do these tasks since the onset of her conditions. She denied having a social life and reported watching television as her only hobby. Finally, her conditions affected her memory, understanding, concentration, ability to follow instructions, her ability to complete tasks, and her ability to handle stress.

An agency consultant for the state, Dr. Robert Hodes, Ph.D., reviewed Alvarez Martin's function report and the medical records she submitted[1] and opined that she was not disabled. Specifically, he determined that her "affective disorders" resulted in mild limitations on activities of daily living and social

---

[1] Alvarez Martin submitted records from her primary care physician, Dr. Juvenal Martinez, and her treating psychiatrist, Dr. Jose Lopez Escobar. Their records are elaborated on later in this opinion.

functioning and moderate limitations in maintaining concentration, persistence, or pace. He determined that she was moderately limited in her ability to understand, remember, and carry out detailed instructions, and her ability to maintain concentration for extended periods of time. He also concluded that her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" was moderately limited.

Thus, he concluded that she could understand and retain simple, and some detailed, work instructions, sustain her attention and persist at simple, routine tasks for extended periods of two-hour segments, sustain her work efforts with appropriate breaks, and maintain regular, punctual attendance. He added that she could relate appropriately and tolerate regular public contact, get along with coworkers without distracting them or exhibiting behavioral extremes, accept criticism and respond appropriately to changes, learn work rules, and adapt to demands of simple, routine work settings. Accordingly, Alvarez Martin's DIB application was denied.

She sought reconsideration, and a second agency consultant conducted an independent review and similarly concluded that Alvarez Martin was not disabled and identified the same limitations described in Dr. Hodes's determination. Accordingly, her application was again denied at the reconsideration level.

Thereafter, Alvarez Martin requested and received a hearing before an ALJ in September 2017, at which she was represented by counsel. The evidence included the following. Records from Alvarez Martin's treating psychiatrist, Dr. Lopez Escobar, from March 2015 through May 2017, indicated that Alvarez Martin suffered from a major depressive disorder and anxiety.[2] Alvarez Martin's evaluations during that time indicated that, while she exhibited a tense, anxious and depressed mood and impaired recent and immediate memory, she had an appropriate appearance; was cooperative and coherent; was intact in her thought process; was oriented to time and place; denied any delusions, obsessions, compulsions, or suicidal ideations; and had good judgment. The notes for her six visits between her initial appointment in March 2015 and January 2016 indicated that she remained depressed despite medication compliance. However, in her four visits between March and October 2016, Dr. Lopez Escobar noted that Alvarez Martin was "less depressed" and responding better or "well" to treatment but still had "very poor attention and concentration."

However, in May 2017, Dr. Lopez Escobar reported that Alvarez Martin "remain[ed] very depressed and ha[d] recently beg[u]n hearing voices . . . and [was] very anxious about her

[2] Beginning in May 2015, medical records from Alvarez Martin's primary care physician, Dr. Juvenal Martinez, confirmed that she suffered from depression, anxiety, and a sleep disorder, and she was taking medications for these issues.

6                    Opinion of the Court                    21-11532

condition given her family history of schizophrenia."[3] Nevertheless, consistent with the prior mental status examinations, Dr. Lopez Escobar reported that Alvarez Martin had an appropriate appearance; was cooperative and coherent; was intact in her thought process; was oriented to time and place; and had good judgment.

On January 12, 2016, Dr. Lopez Escobar completed a work assessment related to Alvarez Martin's application for DIB, and rated Alvarez Martin's ability to do the following as "poor"—(1) follow work rules; (2) relate to coworkers; (3) deal with the public; (4) interact with supervisors; (5) deal with work stress; (6) function independently; (7) maintain attention or concentration; (8) understand, remember and carry out complex, detailed, or simple job instructions; (9) relate predictably in social situations; and (10) demonstrate reliability. He rated her use of judgment and ability to maintain her personal appearance and behave in an emotionally stable manner as fair. Dr. Lopez Escobar indicated that Alvarez Martin was "emotionally unstable" and "unable to work in any capacity."

Later, in August 2017, Dr. Lopez Escobar completed a second work assessment. In this assessment, he rated Alvarez Martin's abilities as "none" in all of the identified areas, except her ability to use judgment and to maintain her personal appearance,

---

[3] There were no treatment records submitted for the time period between October 2016 and May 2017.

which he rated as "poor." He again stated that she was unable to work in any capacity.

At the hearing before the ALJ in September 2017, Alvarez Martin testified that in the past 15 years, she had worked in accounting/bookkeeping and accounts payable and receivable. But she was fired from her job for "not doing [it] properly." She began seeing Dr. Lopez Escobar in 2014, with complaints of insomnia, a lack of concentration and focus, depression, crying, moodiness, and a loss of interest in grooming and other previously enjoyable activities. She described her typical day as spending most of the day in bed, but stated that she gets up and "do[es] whatever [she can] do." However, her sister and mother come over often to help. She used to have "a lot of hobbies," but now she has none. She stated that she felt "terrible" because she was not financially contributing to the household. She asserted that she is unable to concentrate while using a computer or on television programs, she sees what is happening, but cannot follow the plot.

She testified that, other than her family, she did not socialize with others because she did not feel comfortable, does not like being with "a lot of people," and feels "very safe" in her home. She asserted that she experiences sudden mood changes, and can become very argumentative, including screaming at people, at any time for any reason. She denied doing cooking or household chores, stating that the family bought a lot of fast food

or frozen food and that her husband cooks, and her mother and sister handle the household chores.

She confirmed that she sees Dr. Lopez Escobar every two months, but no other therapists. And she takes four medications for her conditions, which she confirmed were helping. She explained that, after she was fired, her emotional state started to deteriorate.

The vocational expert ("VE") testified that an individual with Alvarez Martin's limitations could not perform her past work. But the VE testified that the individual could perform other jobs in the national economy—(1) a tube operator; (2) an addresser; and (3) a document preparer. The ALJ asked whether an individual could perform those jobs if they were only occasionally able to ignore or avoid distractions, including psychologically based symptoms, and the VE opined that they could not. Further, the VE opined that an individual who "would be off task ten or more minutes per hour due to concentration issues . . . would be unemployable."

Looking at Dr. Lopez Escobar's work assessments, the ALJ asked the VE about the first work assessment in which Dr. Lopez Escobar had rated most of Alvarez Martin's abilities as "poor." The VE opined that such a person would be unemployable, as would a person whose abilities were rated as none in the identified areas.

Employing the SSA's five-step sequential evaluation process for determining whether a claimant is disabled, the ALJ denied Alvarez Martin's application.[4] The ALJ found that Alvarez Martin had not engaged in substantial gainful activity since August 27, 2014, and was severely impaired from major depressive and anxiety disorders. At step three, the ALJ determined that Alvarez Martin's mental impairments did not meet or medically equal any listed impairment under §§ 12.04 (depressive disorders) and 12.06 (anxiety disorders) of the Social Security regulations.[5]

---

[4] The evaluation process involves the following five determination steps: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether she "has a severe impairment or combination of impairments"; (3) if so, whether that impairment, or combination of impairments, meets or equals the medical listings in the regulations; (4) if not, whether the claimant can perform her past relevant work in light of her RFC; and (5) if not, whether, based on her age, education, and work experience, she can perform other work found in the national economy. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

[5] A claimant bears the burden of showing her impairments meet or equal a listing. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). In order to meet listing 12.04 or 12.06, Alvarez Martin needed to show medical documentation of a depressive disorder (12.04) or an anxiety disorder (12.06), and, under paragraph B, extreme limitation in one of the following areas of mental function or marked limitations in two of these areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and adapting or managing oneself. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A2, §§ 12.04, 12.06. Alternatively, under paragraph C, Alvarez Martin could meet listing 12.04 or 12.06 if she showed that her mental disorder was

The ALJ then determined that Alvarez Martin had the following RFC:

> [T]o lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk 2 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. She should avoid exposure to hazardous machinery, mechanical parts, and unprotected heights. The claimant could frequently understand and carry out simply oral and written instructions. She requires limited interaction with others and performs best when the work deals primarily with objects rather than people. [She] can relate to, and interact, with others to the extent necessary to carry out simple tasks, but should avoid work that requires more complex interaction or joint efforts to achieve the work goal. She is able to complete simple, routine, and repetitive tasks, but not at a production rate or pace. [She] is able to perform activities within a schedule and maintain regular attendance while being punctual within customary tolerances. She could maintain concentration for at least 2 hours at a time, but could be off task 5 minutes per hour.

---

"serious and persistent," meaning it had lasted at least two years, and there was evidence of both: (1) ongoing medical treatment, therapy, support, or a highly structured setting to diminish the symptoms and signs of the disorder; and (2) "minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life." *Id.* §§ 12.04, 12.06.

In reaching this conclusion, the ALJ found that Alvarez Martin's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record."

As for the medical opinion evidence, the ALJ determined that, in light of the factors in 20 C.F.R. § 404.1527,[6] the opinions of the agency consultants were

> entitled to deference over Dr. Lopez Escobar's opinion because [his] opinion relies heavily on [Alvarez Martin's] subjective complaints and self-reports and is [in]consistent with the claimant's mental status examinations while the State agency consultants' opinions are supported by the medical evidence and are consistent with the record as a whole. In addition, Dr. Lopez Escobar's progress notes are internally inconsistent and he did not provide a detailed analysis regarding the limitations he assessed.

---

[6] Section 404.1527 sets out the following factors for deciding the weight to give medical opinion evidence: (1) the physician's examining relationship with the claimant; (2) the treatment relationship with the claimant; (3) whether the medical opinion is supported by other relevant evidence; (4) the consistency of the medical opinion with the record as a while; (5) whether the medical source is a specialist; and (6) "any factors [the claimant] or others bring to [the ALJ's] attention, or of which [the ALJ] is aware, which tend to support or contradict the medical opinion. 20 C.F.R. § 404.1527(c).

The ALJ then detailed some of the inconsistencies identified in Dr. Lopez Escobar's progress notes.

The ALJ then found that, although Alvarez Martin was unable to perform any past relevant work, there were jobs in the national economy that she could perform—tube operator, addresser, and document preparer. Consequently, the ALJ found that Alvarez Martin was not disabled. Alvarez Martin requested discretionary review of the ALJ's decision by the SSA Appeals Council, and her request was denied.

Alvarez Martin subsequently filed a complaint in the district court, alleging that: (1) the ALJ failed to state with particularity the weight she afforded the different medical opinions, and failed to provide the necessary "good cause" for affording less than controlling weight to Dr. Lopez Escobar's opinion; (2) the ALJ's RFC finding was not supported by substantial evidence; and (3) the ALJ's assessment of Alvarez Martin's alleged symptoms and limitations was not supported by substantial evidence. Upon the filing of cross-motions for summary judgment, a magistrate judge issued a report and recommendation ("R&R"), recommending that the Commissioner's motion for summary judgment be granted. The district court adopted the R&R over Alvarez Martin's objections. This appeal followed.

## II.    Standards of Review

"When, as in this case, the ALJ denies benefits and the [Appeals Council] denies review, we review the ALJ's decision as the Commissioner's final decision." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "[W]e review *de novo* the legal principles upon which the Commissioner's decision is based," and "we review the resulting decision only to determine whether it is supported by substantial evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

In the Social Security context, substantial evidence is "more than a mere scintilla"—it "means only . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *see also Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1103 (11th Cir. 2021) ("Substantial evidence is less than a preponderance, and thus we must affirm an ALJ's decision even in cases where a greater portion of the record seems to weigh against it." (quotation omitted)). "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Winschel*, 631 F.3d at 1178 (alteration in original) (quotation omitted). "Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation omitted).

## III.    Discussion

### 1.    Whether the ALJ erred in weighing the medical opinion evidence

Alvarez Martin argues that the ALJ failed to state with particularity the weight afforded the medical opinion evidence, and relatedly failed to provide good cause to accord less than controlling weight to Dr. Lopez Escobar's opinion as her treating physician. She maintains that this error led to the ALJ's erroneous finding that she was not disabled.

To obtain social security disability benefits, the applicant must prove she is disabled. *See Barnhart v. Thomas*, 540 U.S. 20, 21 (2003). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that [the person] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

When making the disability assessment, the ALJ must give special attention to the medical opinions, particularly those of the treating physician. SSA regulations in force at the time Alvarez Martin filed her application required an ALJ to give "controlling

weight" to a treating physician's opinion if it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2);[7] *see also Winschel*, 631 F.3d at 1179 ("Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians substantial or considerable weight." (quotation omitted)). Good cause to discount a treating physician's opinion exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel*, 631 F.3d at 1179 (quotation omitted).

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Id.* There are no magic words to state with particularity the weight given to the medical opinions. Rather, the ALJ must "state with at least some measure of clarity the grounds for his decision." *Id.* (quotation omitted). In the absence of "at least some measure of clarity" for the basis of the ALJ's decision, "we will decline to affirm simply because some rationale might have supported the ALJ's conclusion." *Id.* (quotation omitted). The weight a medical opinion receives depends on, among other things, the doctor's

---

[7] In 2017, the SSA amended its regulations and removed the "controlling weight" requirement for all applications filed after March 27, 2017. *See* 20 C.F.R. §§ 404.1527, 404.1520c.

examining and treating relationship with the claimant, the evidence the doctor presents to support their opinion, and how consistent that opinion is with the rest of the record. 20 C.F.R. § 404.1527(c). "We will not second guess the ALJ about the weight the treating physician's opinion deserves so long as [the ALJ] articulates a specific justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

In explaining the weight accorded to the medical opinion evidence, the ALJ stated that,

> in light of the factors provided in 20 CFR §404.1527, the State agency consultants' opinions [were] entitled to deference over Dr. Lopez Escobar's opinion because Dr. Lopez Escobar's opinion relies heavily on the claimant's subjective complaints and self-reports . . . while the State agency consultants' opinions are supported by the medical evidence and are consistent with the record as a whole.

Although the ALJ did not use the terms, "great weight," "some weight," or little weight" when discussing the medical opinion evidence, the ALJ stated "with at least some measure of clarity" the weight accorded the medical opinions and the grounds for her decision. *Winschel*, 631 F.3d at 1179 (quotation omitted). By expressly affording deference to the opinions of the agency consultants, the ALJ necessarily did not give controlling weight to Dr. Lopez Escobar's opinion and provided reasons for her decision. Thus, the requirement that the ALJ "state with

particularity" the weight accorded the medical options was satisfied. *See id.*

The ALJ also provided good cause for discounting the opinion of Alvarez Martin's treating physician Dr. Lopez Escobar that Alvarez Martin was unable to work in any capacity. Specifically, the ALJ explained that, although Alvarez Martin suffered from depression and anxiety, Dr. Lopez Escobar's records indicated that her mental status remained stable at each appointment—she presented as cooperated, coherent, and oriented with intact thought processes and good judgment. And although Alvarez Martin indicated on occasion that she was experiencing increased depression, Dr. Lopez Escobar did not record any significant increase in her symptoms. Further, the ALJ noted that "Dr. Lopez Escobar often writes that the claimant is responding well to treatment, which is reflected in the mental status, but then states that the claimant has very poor attention and concentration, which is not consistent with the mental status" recorded during examination. Similarly, the ALJ noted that, although Dr. Lopez Escobar noted in Alvarez Martin's recent examination that she was very depressed and had begun to hear voices, "the mental status portion of the progress note did not mention hallucinations and her thought process was marked as intact." Thus, the ALJ determined that "while [Alvarez Martin] might have some limitations, her complaints [were] not consistent with the evidence of record to the degree that she

18                Opinion of the Court                21-11532

would be precluded from performing all work-related activity."[8]
The ALJ's reasoning is supported by the record.

For instance, in both of the work assessments, Dr. Lopez Escobar rated Alvarez Martin's use of judgment and abilities to maintain her personal appearance and behave in an emotionally stable manner as fair or poor.   But these assessments were inconsistent with his medical records for each of Alvarez Martin's appointments between March 2015 and May 2017, in which he noted that she had an appropriate appearance, was cooperative and coherent with an intact thought process, and had good judgment.    Furthermore,   although   he   stated   in   the   work

---

[8] Alvarez Martin makes much of the fact that, when explaining why the agency consultants' opinions were entitled to deference over Dr. Lopez Escobar's, the ALJ stated that "Dr. Lopez Escobar's opinion relies heavily on the claimant's subjective complaints and self-reports *consistent with the claimant's mental status examinations* while the State agency consultants' opinions are supported by the medical evidence and are consistent with the record as a whole." (emphasis added).  She argues that there was no basis for discounting Dr. Lopez Escobar's opinions where the ALJ admitted that his opinions were consistent with her mental status examinations.  However, based on the ALJ's further explanation of her decision, we agree with the district court that the ALJ clearly meant that Dr. Lopez Escobar's opinions were *inconsistent* with the mental status examinations.

Additionally, Alvarez Martin notes that the ALJ did not mention that, between her first visit in 2015 and her last visit of record in 2017, her medications were adjusted several times.  However, in light of Alvarez Martin's testimony before the ALJ that her current medication regime was working "much better," the number of times her medication was adjusted does not undermine the ALJ's reasoning.

assessments that Alvarez Martin did not have the ability to (1) follow work rules; (2) relate to coworkers; (3) deal with the public; (4) interact with supervisors; (5) deal with work stress; (6) function independently; (7) maintain attention or concentration; (8) understand, remember and carry out complex, detailed, or simple job instructions; (9) relate predictably in social situations; and (10) demonstrate reliability, he left blank the section that asked him to "[d]escribe any limitations and include the medical/clinical findings that support" his ratings related to her "ability to adjust to a job."  And this conclusion is in direct tension with his own treatment records (which at best reflect mild to moderate limitations), as well as Alvarez Martin's own function report.  *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1262 (11th Cir. 2019) (explaining that in order to discount a treating physician's opinion, "an ALJ must identify a genuine inconsistency" (alteration adopted) (quotation omitted)).

Thus, the ALJ articulated a specific, reasonable justification that established "good cause" for giving the treating physician's opinions less than controlling weight.  *Winschel*, 631 F.3d at 1179; *Hunter*, 808 F.3d at 823; *see also Edwards v. Sullivan*, 937 F.2d 580, 583–84 (11th Cir. 1991) (concluding that good cause existed where the medical opinion was contradicted by other notations in the physician's own record).  And this rationale is supported by substantial evidence in the record.  Accordingly, we will not disturb that decision.  *Hunter*, 808 F.3d at 823.

## 2.    Whether the RFC finding is supported by substantial evidence

Alvarez Martin argues that the RFC finding is not supported by substantial evidence due to the ALJ's failure to properly evaluate the medical opinion evidence.  She maintains that had the ALJ not discounted Dr. Lopez Escobar's opinion, no reasonable person could have concluded that, despite her impairments, she could sustain full time work.

Because this claim is premised on her allegation that the ALJ failed to properly weigh the medical opinion evidence, it fails necessarily for the reasons set forth previously.  Moreover, we note that the RFC finding is consistent with the opinions of both of the agency consultants that, despite Alvarez Martin's moderate difficulties with concentration, persistence, and pace, she was capable of performing simple, routine work, and maintaining attention and persistence for 2-hour segments.  Thus, the RFC finding was supported by substantial evidence.  *See Biestek*, 139 S. Ct. at 1154 (explaining that, in the Social Security context, substantial evidence is "more than a mere scintilla"—it "means only . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (quotation omitted)).

## 3.    Whether the ALJ properly assessed Alvarez Martin's alleged symptoms and limitations

Alvarez Martin argues that the ALJ's determination that her subjective allegations concerning the intensity, persistence,

and limiting effects of her symptoms were contradicted by the medical evidence fail to account for her deteriorating condition and indicate a "failure to generally appreciate the nature of mental impairments."

When, as here, the ALJ determines that the claimant's medically determinable impairments could reasonably be expected to produce the claimant's symptoms, the ALJ "must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [the claimant's] symptoms limit [the claimant's] capacity for work."   20 C.F.R. § 404.1529(c)(1).  In evaluating the intensity and persistence of the claimant's symptoms, the ALJ considers "all of the available evidence," from both medical and non-medical sources, and evaluates the claimant's statements "in relation to" the available evidence.  *Id.* § 404.1529 (c)(1), (4).

"[C]redibility determinations are the province of the ALJ, and we will not disturb a clearly articulated credibility finding supported by substantial evidence."  *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (internal citations omitted).

Here, the ALJ made a clearly articulated credibility finding and pointed to specific reasons for discounting Alvarez Martin's subjective testimony concerning the intensity and severity of her impairments—namely, that it was inconsistent with the available evidence in the record.  As indicated from the summary of the testimony detailed in this opinion, that finding was supported by

22                Opinion of the Court                21-11532

substantial evidence in the record.    Accordingly, we will not disturb it.

**AFFIRMED.**