[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14813
Non-Argument Calendar
_____

D.C. Docket No. 8:12-cv-01969-MSS-MAP


TRACY D. CROW,

                                                    Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

                                                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 7, 2014)

Before PRYOR, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

Tracy Douglas Crow appeals the district court's affirmance of the Social Security Administration's denial of his application for disability insurance benefits, arguing that the Administrative Law Judge ("ALJ") erred by improperly discounting the opinion of his treating physician and, instead, giving great weight to the opinion of a non-examining physician. He also contends that the ALJ erred when it found him not credible regarding the intensity, persistence, and limiting effects of the pain, fatigue, and weakness associated with his polymyositis. We will address each argument in turn.

## I.

Crow applied for Social Security disability insurance on November 30, 2010. His application was denied initially, and upon reconsideration. He then requested a hearing before an ALJ, which was held in August 2011.

Crow's medical records show that he received treatment from 2009 to 2012. Several doctors noted his pain and weakness, and, after a series of inconclusive diagnostic tests, his treating physician, Dr. Weiss, diagnosed him with polymyositis and prescribed prednisone, which appeared to significantly help with his weakness, even as the dosage was tapered down. Crow ran his own landscape design business, although, by the time of the hearing before the ALJ, he was only working two hours a week.

2

A Single Decisionmaker (SDM) completed a Residual Functional Capacity Assessment (RFC) in December 2010, noting that Crow could: (1) occasionally lift 20 pounds; (2) frequently lift 10 pounds; (3) stand and/or walk about 6 hours in an 8-hour workday; (4) sit for a total of 6 hours in a workday; and push and pull without other limits. The RFC noted that Crow alleged polymyositis, with strength of 5/5 throughout, and that abnormalities in his EMG were presumed to be polymyositis. The only noted postural limitation was for the occasional use of ladders and the RFC did not note any manipulative, visual, communicative, or environmental limitations. It found that Crow's symptoms were attributable to a medically determinable impairment, that the severity and duration of the symptoms were not unexpected, and that the severity and duration of the symptoms were consistent with the medical and nonmedical evidence. The RFC also noted, however, that recent exams showed marked improvement with normalization of strength, rendering him only partially credible and capable of performing within the limits discussed in the RFC. The SDM reached these conclusions without the benefit of the medical source statement that his treating physician would later produce. A state agency physician reviewed the record in February 2011, did not personally examine Crow, and affirmed the RFC.

In March 2011, his treating physician completed a medical source statement indicating Crow's functional limitations concerning his polymyositis, noting that

3

he should be limited to 2 hours of work per day, with sitting capped at 2 hours a day (1 hour at a time), standing limited to 60 minutes per workday (no more than 45 minutes at a time), and no lifting objects over 5 pounds. He noted that Crow should never bend, stop, balance, work around dangerous equipment, or tolerate heat, cold, dust, smoke, or fumes. His treating physician described Crow's pain as mild, and noted no limitations for the fine or gross manipulation of his hands.

Following a sequential process, the ALJ first found that Crow met the insured status and substantial gainful activity requirements, and had one severe impairment, namely presumed polymyositis. The ALJ noted that his treating physician consistently found that Crow had intact cranial nerves, intact muscle strength, intact reflexes, intact sensation, and intact gait, and that his treating physician indicated his marked improvement of strength in November 2010, with regular strength ratings of 5/5 throughout. His impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P. In coming to this conclusion, the ALJ found that the "medical evidence [did] not document listing-level severity, and no acceptable medical source [] mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination."

The ALJ found that Crow had the RFC to perform the full range of light work as defined in 20 CFR 404.1567(b), because it determined that, although his

4

medically determinable impairment could have been reasonably expected to cause some of the alleged symptoms, his "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not fully credible to the extent that they [were] inconsistent" with the RFC.

The ALJ also discussed the medical evidence, which showed a "routine and conservative treatment history, unremarkable physical examinations, and [Crow's] self-reported activities of daily living."  It noted that his treatment was largely medication management, with few, if any, recommendations for more aggressive treatment.  He had no personal care issues, and was capable of driving and shopping at least once a week.  In combination, these findings demonstrated that Crow's physical impairments were not as severe as alleged.  Additionally, he did not take any pain medication, indicating that his actual pain was not as severe as alleged.  The ALJ noted that the state agency physician concluded that Crow would be capable of a full range of light work, and that this RFC was consistent with the medical records.  As a result, the ALJ concluded that Crow was not under a disability.

After the Appeals Council denied Crow's request for review, and the district court affirmed the Commissioner's decision, Crow filed this appeal.

5

II.

We review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotations omitted). We "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Id.* The individual seeking Social Security disability benefits bears the burden of proving that he is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

We will review the Commissioner's legal conclusions *de novo*. *Id.* When the Appeals Council denies review of the ALJ's decision, we review the ALJ's decision as the Commissioner's final decision. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

The Commissioner uses

a five-step, sequential evaluation process . . . to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on [the RFC] assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

20 C.F.R. § 404.1520(a)(4); *Winschel*, 631 F.3d at 1178.  The RFC is "that which an individual is still able to do despite the limitations caused by his or her impairments."  *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).  The ALJ considers all of the evidence in the record in determining the claimant's RFC.  *Id.*

The claimant bears the burden of proving that he is unable to perform his past relevant work, and if he meets that burden, the Commissioner bears the burden of determining whether there is other work available at the fifth step.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  The Commissioner may show "that the claimant can perform other jobs . . . through the testimony of a VE."  *Id.* at 1229.  "In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  *Id.*  However, an ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

The claimant bears the burden of demonstrating that an impairment meets or equals a listed impairment.  *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).  To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement.  20 C.F.R. § 404.1512(a)-(d);

*Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002).  An impairment that meets only some of the Listing requirements, no matter how severely, does not qualify.  20 C.F.R. § 416.925(c)(3).

"[T]he testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.  *Winschel*, 631 F.3d at 1179.  Good cause for giving less weight to a treating physician's opinion exists where evidence supported a contrary finding or the physician's opinions were conclusory or inconsistent with his own medical records.  *Phillips*, 357 F.3d at 1241.  Such evidence includes the claimant's own testimony about his daily activities.  *Id.*  In light of our limited review, when an ALJ articulates specific reasons for failing to give a physician's opinion controlling weight, there is no reversible error.  *Moore*, 405 F.3d at 1212.

Because the Appeals Council declined to review Crow's application for disability insurance benefits, we will review the ALJ's decision as the Commissioner's final decision.  *Doughty*, 245 F.3d at 1278.

None of the limitations Crow's treating physician noted in the medical source information form were included in any of his previous treatment notes, which recorded Crow's marked return of strength in response to the prednisone.

On the same day that his treating physician completed the disability evaluation, he made notes indicating that Crow would possibly be completely tapered off of prednisone, and that he needed to be "somewhat careful" with his activity level, which is inconsistent with the considerable restrictions noted on the medical source information form on the same day. *Phillips*, 357 F.3d at 1241. While his treating physician's earlier treatment notes all indicated that Crow sought treatment for weakness, they also chronicled his positive response to the prednisone and his consistent return to strength of 5/5 throughout.

In addition to the inconsistencies between his treating physician's disability assessment and his treatment records, evidence of Crow's daily activities also provided good cause to discount his treating physician's opinion. *Phillips*, 357 F.3d at 1241. Crow testified that he would work more than two hours a week if he had more customer calls, he had no problems with his personal care, he was able to engage in light chores and cooking, and he drove at least once a week and went shopping, indicating that he was capable of more regular activity than he alleged. Other evidence identified by the district court indicated that he could play Nintendo Wii for several hours a day. Combined with his infrequent treatment history, largely built around diagnosis and prescription management, and the mild clinical findings, including his steady and consistent improvement in strength,

9

Crow's daily activities indicated that he was not as limited as his treating physician alleged. *Phillips*, 357 F.3d at 1241.

On the other hand, the non-examining physician's assessment, indicating that Crow was capable of the full range of light work, was consistent with the record, as the ALJ noted. The ALJ provided specific reasons for discounting his treating physician's opinion, and those reasons are supported by the record such that the ALJ did not err. *Moore*, 405 F.3d at 1212. The ALJ also provided specific reasons for giving greater weight to the non-treating physician's assessment. *Winschel*, 631 F.3d at 1179. Accordingly, the ALJ did not err in weighing the medical opinion evidence.

### III.

When a claimant attempts to establish disability through his own testimony concerning pain, we apply a "pain standard" test requiring a showing of: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson*, 284 F.3d at 1225; *see also* 20 C.F.R. § 404.1529 (discussing how the ALJ evaluates a claimant's symptoms). The "pain standard" is applicable to other subjective symptoms as well. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

The ALJ must "articulate specific reasons for questioning the claimant's credibility" if subjective symptom testimony is "critical" to the claim.  *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."  *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995); *see also Moore*, 405 F.3d at 1212 ("We recognize that credibility determinations are the province of the ALJ.").  "The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable . . . [us] to conclude that the ALJ considered [the] medical condition as a whole."  *Dyer*, 395 F.3d at 1210 (quotations and alterations omitted).

The ALJ may consider the claimant's daily activities when evaluating his subjective symptoms, but a claimant's admission that he participates in daily activities for short durations does not necessarily disqualify him from a disability. 20 C.F.R. § 404.1529(c)(3)(i); *see Lewis*, 125 F.3d at 1441 (11th Cir. 1997) (noting that the claimant's successful completion of a six-minute treadmill exercise was not necessarily indicative of his ability to work, and that the fact that he did housework and went fishing was not inconsistent with the limitations recommended by his treating physicians).

The ALJ was required to apply the "pain standard" to Crow's symptoms, because the principal symptoms of which Crow complained are subjective symptoms, namely pain, fatigue, and weakness. *Dyer*, 395 F.3d at 1210. The ALJ acknowledged that Crow had an underlying medical condition, polymyositis, and noted that it could reasonably be expected to give rise to some of the symptoms he alleged. The ALJ found Crow's claims regarding the intensity, persistence, and limiting effects of his polymyositis to be inconsistent with the record, however, because his treatment history consisted largely of appointments every few months to monitor his progress on the prednisone. Crow reported significant improvement through the prednisone treatment without the return of his symptoms, consistently rating strength of 5/5 throughout, such that his treating physician recommended continued tapering of the dosage and predicted that he could possibly stop taking the prednisone altogether. His treating physician recommended that Crow take care with his level of activity, but did not indicate any significant limitations. Despite claiming that his generalized pain sometimes prevented him from standing and that it was usually a 4 or 5 on a 10-point scale, he did not take any pain medication and was able to manage the pain through the TENS unit, rest, and occasional cortisone injections. Accordingly, the medical records did not support Crow's claims that he could only work a few hours a week and lift less than a half-gallon of milk, nor did they support his allegations of debilitating pain or

exhaustion following only 30 minutes of sitting, supporting the ALJ's credibility determination. *Moore*, 405 F.3d at 1212.

Additionally, as noted in Section Two, *supra*, Crow's testimony and other record evidence regarding his daily activities indicated, at the very least, that he was capable of more regular activity than he alleged. The ALJ properly considered these activities when it found that Crow was not credible to the extent his allegations were inconsistent with the RFC. 20 C.F.R. § 404.1529(c)(3)(i). Given Crow's quick and sustained improvement using prednisone, and daily activity that indicated a greater capacity for work than alleged, the ALJ made a clearly articulated credibility finding that was supported by substantial evidence. *Foote*, 67 F.3d at 1562. Accordingly, we affirm.

**AFFIRMED.**