[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-14233
Non-Argument Calendar

_____

D.C. Docket No. 1:18-cv-23973-KMW

JESUS ANGEL YANES,

Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 15, 2021)

Before MARTIN, NEWSOM, and BRANCH, Circuit Judges.

PER CURIAM:

Jesus Yanes, through counsel, appeals the district court's order granting the Social Security Administration ("SSA") Commissioner's motion for summary judgment and affirming the Commissioner's decision denying Yanes's application for disability insurance benefits ("DIB") under 42 U.S.C. § 405(g). He raises three issues on appeal. First, he argues that the administrative law judge ("ALJ") erred in weighing the medical opinion evidence, which he maintains resulted in a variety of errors in the ALJ's analysis. Second, he argues that substantial evidence did not support the ALJ's residual functional capacity ("RFC") finding and the related finding that Yanes could perform other work in the national economy. Third, he asserts that substantial evidence does not support the ALJ's evaluation of his subjective complaints. After careful review, we affirm.

## I.      Background

In September 2014, Yanes applied for DIB, stating that his bipolar condition and gout limited his ability to work, and that his disability started on August 13, 2014. He indicated that he worked previously in sanitation services and as a welder, but that he had stopped working because of the specified medical conditions. His application was denied initially and upon reconsideration.

Thereafter, Yanes requested and received a hearing before an ALJ in March 2017, at which he was represented by counsel. The evidence included the following. An October 2014 report of contact with SSA indicated that Yanes was

"able to self-groom and does so regularly," drove independently, got along well with other people, made purchases, paid bills, ran errands, watched television, and spoke with and visited with family regularly.  Additionally, Yanes occasionally prepared meals, did most of the household shopping, and completed "all tasks" in "a timely manner."

Medical records from Yanes's psychiatrist Dr. Oscar Pozo, dated January 2013 through July 2013, indicated that Yanes was doing well with his medication, and that Yanes reported feeling "better and more stable."  The progress notes indicated that for each visit Yanes appeared well groomed, had a goal directed thought process, and was alert, oriented and cooperative, with intact memory and concentration.  And Yanes denied any hallucinations, delusions, obsessive or compulsive thoughts, or homicidal or suicidal ideation.

Dr. Roberto Hernando, a psychiatrist, treated Yanes from April 2014 to October 2016.  Dr. Hernando diagnosed Yanes with bipolar disorder and determined that Yanes's Global Assessment of Functioning ("GAF") score was 55, which indicated moderate functioning.  Dr. Hernando's notes for Yanes's evaluations between 2014 and 2016 indicated that, while Yanes was anxious and only expressive in affect, he had an appropriate appearance; was alert; was cooperative; was intact in his concentration, memory, and abstraction; had a goal-directed thought process; and had an unremarkable thought content without any

3

delusions, obsessions, compulsions, or suicidal or homicidal ideations.[1]  On April 22, 2016, Dr. Hernando completed a work assessment related to Yanes's application for DIB, and rated Yanes's ability to do the following as "poor"—(1) follow work rules; (2) relate to coworkers; (3) deal with the public; (4) use of judgment; (5) interact with supervisors; (6) deal with work stress; (7) function independently; (8) maintain attention or concentration; (9) understand, remember and carry out complex, detailed, or simple job instructions; (10) behave in an emotionally stable manner; (11) relate predictably in social situations; and (12) demonstrate reliability.[2]  Dr. Hernando indicated that Yanes's "chronic and persis[tant] symptoms of bipolar disorder [and] mania" interfere with Yanes's ability "to work on [a] daily basis."

Dr. Marele Orozco, a psychologist, treated Yanes from December 2015 to November 2017.  Dr. Orozco assessed a GAF score of 60 at Yanes's initial December 2015 visit, which indicated moderate functioning.  At the time of his initial visit, Yanes complained of depression following his adult son's death by accidental drowning the previous year and his daughter-in-law's subsequent move out-of-state with Yanes's granddaughter.  In addition to depression, Yanes

---

[1] On at least two occasions in August and September 2014, respectively, Yanes presented with hypomanic symptoms and paranoia.

[2] The assessment defined "poor" as the individual's "[a]bility to function in this area [was] seriously limited but not precluded."

complained of "paranoid ideation."  Yanes reported to Dr. Orozco that he was diagnosed with bipolar disorder in 2005, at which time he received ongoing psychiatric treatment and medications, which were beneficial to him.  Dr. Orozco's progress notes between December 2015 and November 2017 indicated that Yanes had an orientated and rational functional status and was cooperative and alert, but frequently presented with dysphoria, sad affect, indecisiveness, social withdrawal, and feelings of fear, helplessness, hopelessness, and paranoia.  However, Yanes showed some improvement in various areas with each therapy session.  On July 12, 2016, Dr. Orozco completed a work assessment for Yanes in which she gave virtually identical ratings as Dr. Hernando.

Finally, records from Yanes's general physician Dr. Luis Diaz-Secades, M.D., reflected that, among other diagnoses, Yanes had bipolar disorder, gout, hypertension, obesity, and sleep apnea.  Dr. Diaz-Secades completed a work assessment and indicated that Yanes had "no physical impairment" and could "frequently" lift and carry 20 to 50 pounds, and could sit, stand, or walk for a total of four hours without interruption.  He indicated that Yanes has some limitations in the use of his left hand which limited his simple grasping and fine manipulation ability.  Furthermore, he reported no work environment restrictions caused by Yanes's impairments.

At his 2017 hearing before the ALJ, Yanes, via an interpreter, testified that he had gone to school through the ninth grade in Cuba, and he never learned to read, write, or speak English.  He had a driver's license and drove independently.  Between 2000 and 2008, he worked in welding.  Then between 2008 and 2014, he worked in sanitation in Miami Beach, sweeping streets and empty trash cans.  He stated that he stopped working in 2014 because he had a bipolar "crisis" and was experiencing hallucinations.  Yanes explained that he is disabled and unable to work because when he feels "down," he does not have any energy, and when he is in "the hyper mood," he experiences lots of anxiety, overeats, and feels provoked by everyone, so he does not leave the house.  When asked how often he has a bipolar-related "crisis," Yanes explained that he had three episodes in 2014, and since then, he "experience[s] them on a lesser degree" usually once about "every four to five months."  For the milder episodes, it takes him "sometimes a week" with medication to recover.  He confirmed that he had not had a major crisis since 2014, and that he sees Dr. Hernando approximately once a month and Dr. Orozco approximately once a week.  Yanes explained that his wife does not work outside of the home and receives DIB benefits "due to chronic depression."  His wife attends all appointments with him, and she also receives treatment from Dr. Hernando.

6

Yanes stated that he did not have any problems with the use of his arms, but that he had surgery on his left hand previously.  He estimated that he could not sit longer than 15 minutes because he was "a restless person."  Yanes indicated that he had some problems with his memory and has to annotate his medical appointments in order to remember things.  Yanes denied having any social activity and stated that he did not like to "go out" because crowds and noises agitate him.  Although he was usually accompanied when he went out, he would go out alone to get gas for the car or to visit his sister who lived nearby.  He explained that he would do the grocery shopping with his wife sometimes, and they alternated cooking, but she did all the household chores because he did not have the energy to help.  Yanes explained that when he tries to help with chores, he ends up leaving them "halfway done."  Yanes confirmed that he was able to self-groom without assistance, but that he only showers every three days.

Yanes explained that, if he is having a "down" day, he will lie in bed all day and only get up to get something to drink.  On days he is not down, he walks around his house and watches television, which he described as his "normal life."  When questioned as to how many down days he has, Yanes stated that they occur three to four days of the week and then he is in a manic state usually about two days of the week.  However, when asked again later in the hearing how often Yanes spends three to four days in bed, Yanes stated that it happens once a month.

The ALJ then asked "so . . . it's not every week" and Yanes stated that he could not tell the ALJ "the exact time frame," just that "it happens when [Yanes] is down and when [he] feels the provocation of the TV."

Yanes asserted that he most recently experienced hallucinations—hearing voices and "provocations" coming from the television—three to four weeks prior to the hearing, and the hallucinations lasted for approximately two days. Yanes stated that he had reported these hallucinations to Dr. Orozco and Dr. Hernando.

Yanes confirmed that he takes medications and "they control" his condition. The ALJ asked Yanes if he had reported to his doctor that he was spending three to four days out of the week in bed, and Yanes stated that he had, but his doctor said it was "temporary" and he did not want to prescribe any more medications.

Yanes's wife testified that, when her husband is in a depressive episode, which she stated usually last six days a week, he sits quietly on the couch and does not have energy or motivation to do anything. And when he has anxiety, he walks around the house and overeats. She indicated that Yanes believes the television is talking about him and provoking him about two to three times a week. She stated that Yanes does not feel like showering or shaving often, and that he never socializes with anyone.

8

Based on the ALJ's hypothetical,[3] the vocational expert ("VE") testified that the hypothetical individual would not be able to perform the relevant past work as a welder or in sanitation. But said individual could work as an industrial cleaner, a "laundry labeler," or as a linen room attendant. The ALJ asked another hypothetical, adding the limitations that the individual could occasionally grasp and finely manipulate with the left hand and frequently was limited in various physical exertions. The VE testified that such a person could not perform the previously described medium work, but could do light level work as a school crossing guard, school bus monitor, or a sandwich board carrier. Yanes's counsel then asked whether someone with limitations as identified by Drs. Hernando's and Orozco's medical assessments would be able to engage in any work, and the VE testified that the person would not.

Employing the SSA's five-step sequential evaluation process for determining whether a claimant is disabled, the ALJ denied Yanes's application.[4]

---

[3] The hypothetical was as follows:

[A]ssume a person of the same age with the same education and work experience as the claimant. The individual is limited to medium exertional level; however, has the following additional limitations: Never climb ladders, ropes, or scaffolds; never work at unprotected heights. The individual can understand and remember simple instructions; can perform simple, routine, and repetitive tasks; can make simple work-related decisions. The individual is able to interact frequently with supervisors and occasionally with coworkers and the general public. Is that individual capable of performing the past work?

[4] The evaluation process involves the following five determination steps: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether he "has a severe

The ALJ found that Yanes had not engaged in substantial gainful activity since August 13, 2014, and was severely impaired from his bipolar disorder.[5] The ALJ then determined that Yanes's bipolar disorder did not meet or medically equal any listed impairment under § 12.00, including § 12.04.[6] In reaching this conclusion, the ALJ examined whether Yanes had an extreme or marked limitation in the following functional areas identified in paragraph B—understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself—and concluded that he had only moderate limitations in these categories, citing various record

---

impairment or combination of impairments;" (3) if so, whether that impairment, or combination of impairments, meets or equals the medical listings; (4) if not, whether he can perform his past relevant work in light of his RFC; and (5) if not, whether, based on his age, education, and work experience, he can perform other work found in the national economy. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

[5] The ALJ found that Yanes's physical conditions—gout, obesity, sleep apnea, and high blood pressure—were not severe impairments because the medical evidence showed that they were either controlled with medication or were not supported by additional medical evidence showing a severe limitation.

[6] A claimant bears the burden of showing his impairments meet or equal a listing. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). In order to meet listing 12.04, Yanes needed to show medical documentation of bipolar disorder, and under paragraph B extreme limitation in one of the following areas of mental function or marked limitations in two of these areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and adapting or managing oneself. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. Alternatively, under paragraph C, Yanes could meet listing 12.04 if he showed that his mental disorder was "serious and persistent," meaning it has lasted at least two years, and there was evidence of both: (1) medical treatment, therapy, support, or a highly structured setting diminished the symptoms and signs of the disorder; and (2) he has "minimal capacity to adapt to changes in [his] environment or to demands that are not already part of [his] daily life." *Id.*

evidence.[7]  The ALJ also found that Yanes did not meet the criteria in paragraph C because there was no evidence that he could not adjust and adapt to a vocational setting or other changes in his environment.

The ALJ then determined that Yanes had the following RFC: he could perform medium work with various physical limitations; could understand and remember simple instructions; could perform simple, routine, and repetitive tasks; could make simple work-related decisions; could interact frequently with supervisors; could occasionally interact with coworkers and the general public; and could adequately adapt to simple changes in the workplace.  The ALJ found that the objective medical evidence did not support Yanes's testimony that his impairments were "as severe as alleged or that he was unable to work," citing various portions of the record.[8]

As for the medical opinion evidence, the ALJ gave "limited weight" to Dr. Hernando's opinion and work assessment because, "given the totality of the

---

[7] The ALJ noted that Yanes's testimony as to his abilities conflicted with other evidence in the record, including an October 2014 Report of Contact that Yanes completed with the Disability Determination Service and with his physician's progress treatment notes.  Thus, the ALJ determined that, despite Yanes's testimony, he only had moderate deficits in the relevant four criteria areas.

[8] The ALJ noted "that much of [Yanes's and his wife's] testimony was contradicted by the evidence in the record."  For instance, his alleged hallucinations from the television were not corroborated by any medical record.  Similarly, his testimony as to chronic depressive periods followed by periods of hypomania were not supported by any medical record evidence.  Finally, the ALJ noted that there were inconsistencies within Yanes's own testimony and with that of his wife.

11

evidence, it [was] excessively limiting and inconsistent with Dr. Hernando's own assignment of a moderate GAF rating of 55" and was inconsistent with his treatments notes over the 2-year period he treated Yanes.  Similarly, the ALJ gave "limited weight" to Dr. Orozco's opinion and work assessment because it too was "more limiting than warranted by the totality of the evidence" and was inconsistent with her assessment of a GAF of 60 and her treatment notes.  Finally, the ALJ gave "some weight" to Dr. Diaz-Secades's opinion because he directly examined Yanes but noted that no physical examination or testing supported Yanes's alleged hand limitations.

The ALJ then found that, although Yanes was unable to perform any past relevant work, there were jobs in the national economy that he could perform— industrial cleaner, "laundry laborer," and linen room attendant.  Consequently, the ALJ found that Yanes was not disabled.  Yanes requested discretionary review of the ALJ's decision by the SSA Appeals Council, and his request was denied.

Yanes filed a complaint in the district court, arguing that: (1) the ALJ erred in evaluating the medical opinion evidence; (2) the ALJ's RFC finding was not supported by substantial evidence; and (3) the ALJ's assessment of Yanes's alleged symptoms and limitations was not supported by substantial evidence.  Upon the filing of cross-motions for summary judgment, a magistrate judge issued a report and recommendation ("R&R"), recommending that the Commissioner's

motion be granted. The district court adopted the R&R over Yanes's objections and affirmed the Commissioner's decision. This appeal followed.

## II.    Standards of Review

"When, as in this case, the ALJ denies benefits and the [Appeals Council] denies review, we review the ALJ's decision as the Commissioner's final decision." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "[W]e review *de novo* the legal principles upon which the Commissioner's decision is based," and "we review the resulting decision only to determine whether it is supported by substantial evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

In the Social Security context, substantial evidence is "more than a mere scintilla"—it "means only . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *see also Simon v. Comm'r, Soc. Sec. Admin.*, __ F.4th __, 2021 WL 2345638, at *7 (11th Cir. June 9, 2021) ("Substantial evidence is less than a preponderance . . . ." (quotation omitted)). "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Winschel*, 631 F.3d at 1178 (alteration in original) (quotation omitted). "Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial

13

evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation omitted).

## III.    Discussion

### 1.  Whether the ALJ erred in weighing the medical opinion evidence

Yanes raises a variety of arguments related to the ALJ's weighing of the medical opinion evidence, particularly that of treating physicians Dr. Hernando, Dr. Orozco, and Dr. Diaz-Secades.  The gravamen of his argument is that the ALJ failed to give proper weight to those physicians' medical opinions without good cause, and that this error led to the ALJ's erroneous finding that he did not meet listing 12.04.

To obtain social security disability benefits, an applicant must prove he is disabled.  *Barnhart v. Thomas*, 540 U.S. 20, 21 (2003).  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The impairment must be "of such severity that [the person] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

When making the disability assessment, the ALJ must give special attention to the medical opinions, particularly those of the treating physicians. SSA regulations in force at the time Yanes filed his application required an ALJ to give "controlling weight" to a treating physician's opinions if they were "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2)[9]; *see also Winschel*, 631 F.3d at 1179 ("Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians substantial or considerable weight." (quotation omitted)). Good cause to discount a treating physician's opinion exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel*, 631 F.3d at 1179 (quotation omitted).

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Id.* The weight a medical opinion receives depends on, among other things, the doctor's examining and treating relationship with the claimant, the evidence the doctor presents to support their opinion, and how consistent that opinion is with the rest of the record. 20 C.F.R.

---

[9] In 2017, the SSA amended its regulations and removed the "controlling weight" requirement for all applications filed after March 27, 2017. *See* 20 C.F.R. §§ 404.1527, 404.1520c.

15

§ 404.1527(c).  "We will not second guess the ALJ about the weight the treating physician[s'] opinion[s] deserve[] so long as [the ALJ] articulates a specific justification for it."  *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

Here, although Yanes quarrels with the weight the ALJ afforded the opinions of Dr. Hernando, Dr. Orozco, and Dr. Diaz-Secades, the ALJ provided specific reasoning for the weight she afforded their opinions.  For instance, the ALJ explained that she gave Dr. Hernando's and Dr. Orozco's opinions limited weight because their opinions were inconsistent with their own records and with the other evidence in the record.  Likewise, the ALJ explained that she afforded some weight to Dr. Diaz-Secades's opinion because her statements concerning Yanes's hand limitations were not supported by the other evidence in the record.[10]

---

[10] Although Yanes asserts that the ALJ used "vague," "non-specific," and "ambiguous" terminology—by referring to "limited weight" and "some weight"—when describing the weight she assigned to the medical opinions, an ALJ is not required to use any "particular phras[ing] or formulations" when rendering her decision.  *Jamison v. Bowen*, 814 F.2d 585, 588–89 (11th Cir. 1987).  And Yanes has not cited any authority for the proposition that the ALJ must use certain phrasing when describing the weight the ALJ gives to medical opinions.

Additionally, Yanes's argument that the ALJ failed to articulate the weight accorded to the treating physicians' progress notes, which he maintains are also sources of medical opinions, is belied by the record.  The ALJ discussed the treating physicians' progress notes in her decision and in the context of the weight she afforded each physician's medical opinion.  Furthermore, even assuming arguendo, that the ALJ's consideration of the progress notes was inadequate, Yanes has failed to identify any unexamined medical opinion contained within those progress notes or how said medical opinion, if it so exists, would alter the outcome.  *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (holding that the complained-of error was harmless because it did not have an impact on the step being challenged).  Notably, after arguing that the ALJ failed to articulate or give appropriate weight to his treating physicians' progress notes, Yanes shifts gears and argues that the ALJ relied too extensively on the progress notes—which

Thus, the ALJ articulated a specific, reasonable justification that established "good cause" for giving the treating physicians' opinions less weight. *Winschel*, 631 F.3d at 1179; *Hunter*, 808 F.3d at 823; *see also Edwards v. Sullivan*, 937 F.2d 580, 583–84 (11th Cir. 1991) (concluding that good cause existed where the medical opinion was contradicted by other notations in the physician's own record). And this rationale is supported by substantial evidence in the record. Accordingly, we will not disturb that decision. *Hunter*, 808 F.3d at 823.

Relatedly, Yanes argues that the ALJ's improper weighing of his treating physicians' opinions resulted in the ALJ erroneously determining that he failed to meet the criteria for Listing 12.04. Because this argument is premised on Yanes's argument concerning the weight assigned to the medical opinions, it fails necessarily in light of our determination that the ALJ's weighing of the medical opinions is supported by substantial evidence. In any event, we conclude that substantial evidence supports the ALJ's determination that Yanes had only moderate limitations in the mental function areas specified in listing 12.04 paragraph B and that he did not meet the criteria set forth in paragraph C.

---

he emphasizes only reflect day-to-day observations and not Yanes's abilities in the work setting—and on his GAF scores. This assertion too is belied by the record. The ALJ considered the progress notes and the GAF scores in light of all the record evidence before it, and Yanes has cited no binding authority demonstrating that such consideration is inappropriate.

17

**2. Whether substantial evidence supports the ALJ's RFC finding and related finding that Yanes could perform work in the national economy**

Yanes argues that, due to the errors in the ALJ's evaluation of the medical opinions and related evidence, the ALJ's RFC finding is not supported by substantial evidence. He also argues that an apparent conflict exists between the VE's identification of "laundry labeler" and the ALJ's use of the "laundry laborer" position.[11]

At step four of the disability evaluation, the ALJ must determine: (1) a claimant's RFC by considering all relevant medical and other evidence, and (2) whether the claimant can return to past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The SSA's regulations define RFC as "the most [a claimant] can still do despite [the] limitations" caused by the claimant's impairments. 20 C.F.R. § 404.1545(a)(1).

---

[11] For the first time on appeal, Yanes argues that the VE's testimony concerning jobs in the national economy that a hypothetical person with Yanes's background could perform were not an accurate reflection of potential jobs that Yanes could perform because the ALJ in posing hypotheticals to the VE omitted two of the limitations she included in Yanes's RFC—that "he could adapt to simple changes in the work place" and "that he could understand and remember simple instructions." Yanes asserts that these limitations are inconsistent with the jobs identified by the VE, which require higher reasoning levels. Because Yanes, who was represented by counsel, failed to raise this argument in the district court, we will not address it on appeal. *Crawford*, 363 F.3d at 1161 ("[W]e need not address Crawford's contention that the ALJ's hypothetical question to the VE was inadequate because Crawford failed to raise this issue in the district court."); *Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (declining to reach appellant's argument concerning VE testimony "because he did not raise it before the administrative agency or the district court").

If the claimant cannot return to past work, the ALJ proceeds to step five, which requires the ALJ to determine whether, in light of the RCF and the claimant's age, education, and work experience, "the claimant can make an adjustment to other work." *See Phillips*, 357 F.3d at 1239 (quotation omitted). "The ALJ thus must determine, in light of the Dictionary of Occupational Titles (DOT) and the [VE's] testimony, whether jobs exist in the national economy in significant numbers that the claimant could perform in spite of his impairments." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021) (quotation omitted).

Here, with regard to Yanes's contention regarding the medical opinions and related evidence, as discussed above, the ALJ properly evaluated the medical evidence. Further, the ALJ's RFC determination that Yanes could perform medium work,[12] with certain physical limitations, is supported by substantial evidence. Although Yanes contends that the RFC finding conflicts with his testimony and the assessments of his treating physicians, the ALJ concluded that most of Yanes's testimony was contradicted by the objective evidence in the record and that his limitations were not as severe as he testified. Further, as

---

[12] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). Furthermore, the regulations provide that, if a person can perform medium work, then "he or she can also do sedentary and light work." *Id.*

explained previously, the ALJ gave the opinions of Dr. Hernando and Dr. Orozco only "limited weight" because their opinions were inconsistent with their own records and with the other objective evidence in the record. Once the ALJ discounted most of Yanes's testimony and placed limited weight on the opinions of Dr. Hernando and Dr. Orozco, the remaining evidence in the record indicated that: Yanes's conditions were well managed with medications; he had no severe physical limitations; he did not suffer from any hallucinations or delusions; and he had only moderate limitations in understanding, concentrating, and interacting with others. Indeed, his treating physician Dr. Diaz-Secades's evaluation fully supported the RFC finding, as it indicated that Yanes had "no physical impairment," could "frequently" lift and carry 20 to 50 pounds, and reported no work environment restrictions caused by Yanes's impairments.[13] Thus, substantial evidence supports the ALJ's determination that Yanes could perform medium work.

Yanes also argues that the ALJ's related finding that Yanes could perform work in the national economy is not supported by substantial evidence because an apparent conflict exists between the ALJ's finding that Yanes could perform the

---

[13] Yanes asserts that the RFC finding and jobs identified are precluded because, as Dr. Diaz-Secades noted in his assessment, Yanes's ability to use his left hand was restricted and impaired his grasping and fine manipulation skills, which is required for medium work positions. However, the ALJ's finding that there was no physical examination or testing to support the hand limitation reported in Dr. Diaz-Secades assessment is supported by substantial evidence.

job of "laundry laborer" and the VE's identification of "laundry labeler" at the hearing.  We disagree.

The transcript of the hearing indicates that the VE identified the position of "laundry labeler . . . DOT is 361.687-018," and the ALJ identified this same DOT number when referencing "laundry laborer" in her decision.  Thus, it is clear that they both were referring to the same occupation.  DOT 361.687-018 corresponds with "laundry laborer."  *Laundry Laborer*, Dictionary of Occupational Titles, 361.687-018, 1991 WL 672992 (4th ed. 1991).  In fact, "laundry labeler" is not an identified occupation in the DOT.  Therefore, the discrepancy is nothing more than a transcription error, which does not undermine the ALJ's decision.  Accordingly, there is no conflict between the ALJ's identification of jobs that Yanes could perform in the national economy and the VE's testimony.

**3.  Whether substantial evidence supports the ALJ's evaluation of Yanes's subjective complaints**

Yanes argues that the ALJ erred in finding that his testimony concerning the intensity, persistence, and limiting effect of his symptoms was inconsistent with the record evidence, and that the ALJ's determination is not supported by substantial evidence.

When, as here, the ALJ determines that the claimant's medically determinable impairments could reasonably be expected to produce the claimant's symptoms, the ALJ "must then evaluate the intensity and persistence of [the

21

claimant's] symptoms so that [the ALJ] can determine how [the claimant's] symptoms limit [the claimant's] capacity for work." 20 C.F.R. § 404.1529(c)(1). In evaluating the intensity and persistence of the claimant's symptoms, the ALJ considers "all available evidence," from both medical and non-medical sources, and evaluates the claimant's statements "in relation to" the available evidence. *Id.* § 404.1529 (c)(1), (4).

"[C]redibility determinations are the province of the ALJ, and we will not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (internal citations omitted).

The ALJ made a clearly articulated credibility finding and pointed to specific reasons for discounting Yanes's subjective testimony concerning the intensity and severity of his impairments—namely that it was internally inconsistent, inconsistent with his wife's testimony, and inconsistent with the available evidence in the record.[14] As indicated from the summary of the

---

[14] Yanes argues that, under 20 C.F.R. § 404.1529(c)(2), the SSA cannot reject a claimant's statements "solely because the available objective medical evidence does not substantiate [the claimant's] statements." But this regulation merely stands for the proposition that a claimant's statements will not be rejected solely because the statements are not corroborated by the medical evidence—which is a very different circumstance from when the claimant's statements are *inconsistent* with the medical or other evidence of record. Indeed, § 404.1529(c)(4) expressly instructs the ALJ to evaluate the claimant's statements "in relation to" the available evidence and to "consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of

testimony detailed in this opinion, that finding was supported by substantial evidence in the record.  Accordingly, we will not disturb it.  *Id.*

## IV.    Conclusion

Because the ALJ's decision is supported by substantial evidence and Yanes is not entitled to relief on any of his claims, we affirm.

**AFFIRMED.**

---

the evidence."  Accordingly, the ALJ did not err in considering the inconsistencies between Yanes's testimony and the evidence and in discrediting much of his testimony on that basis.