[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-14103

Non-Argument Calendar

_____

JOHNNY BRETT GREGORY,

Plaintiff-Appellant,

*versus*

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 4:21-cv-00060-WEJ

_____

Before NEWSOM, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Johnny Brett Gregory, proceeding *pro se* on appeal, appeals a magistrate judge's order affirming the Commissioner of the Social Security Administration's ("Commissioner") denial of his application for supplemental security income ("SSI"). He argues that substantial evidence did not support (1) the administrative law judge's ("ALJ") finding that he did not meet or equal Listing 12.15 for Trauma and Stressor-Related Disorders and (2) the ALJ's determination of his residual functional capacity ("RFC").[1] For the following reasons, we affirm.

## I.    Background

In November 2019, Gregory applied for SSI, under Title XVI of the Social Security Act, alleging that his disability, post-traumatic stress disorder ("PTSD"), began on July 19, 2019. His initial application was denied. He sought reconsideration, again claiming PTSD as his disability but adding "anxiety" and "emotional feelings of stress and debilitating depression." This renewed request was also denied. Then, Gregory requested a hearing and appeared

---

[1] Gregory has also moved to reassign this case to a different judge on remand. Because we conclude, however, that substantial evidence supported the ALJ's findings and affirm, we need not decide this matter. Accordingly, we DENY Gregory's motion.

before an ALJ in October 2020. The ALJ admitted Gregory's medical records, which included the following.

### A.    Medical Records

In a mental status exam in January 2011, Dr. William Corey of the Jesup Federal Correctional Institution, where Gregory was imprisoned at the time, noted the following. Gregory was alert with an appropriate manner and a cooperative attitude. His affect showed a normal range, with normal intensity and stability. He was oriented by person, place, time, and purpose for the interview, his concentration and attention were within normal limits, and he showed "no indications of delusional mood or ideas." Dr. Corey concluded that Gregory was "functioning at a high level" and experiencing only "situational stress," so there was no need for a follow-up.

In April 2019, Gregory was examined by Dr. Jessica Malmad. Dr. Malmad noted that Gregory's "only medical problem [was] migraines" for which medication "ha[d] been very helpful." Gregory also reported that he had trouble sleeping sometimes because he was "so pumped up and excited to be out of prison." Gregory had no physical abnormalities, answered questions appropriately, was alert and coherent, and had a normal mood and affect. Dr. Malmad noted that other than those issues (the migraines and trouble sleeping), Gregory "ha[d] no other specific complaints at [that] time.

In July 2019, Gregory was seen by licensed professional counselor Jill Locklear.  Locklear conducted a mental status evaluation of Gregory, which indicated the following.  Gregory was alert and cooperative; he was oriented to person, time, situation, and place; his appearance was kempt; his mood was euthymic; his speech was normal; his affect was full; his thought content was unremarkable; he had no hallucinations; his thought processes were logical; his memory was intact; and his insight and judgment were fair.

However, Locklear noted that Gregory reported "feeling nervous, trauma reactions, worry/anxiety, not sleeping, paranoia, and feeling unsafe."  She also noted that he reported difficulty paying attention once or twice a week, feeling easily startled and anxious daily, and experiencing nightmares or flashbacks once or twice a week.  Ultimately, Locklear concluded that Gregory "present[ed] with symptoms from incarceration that indicated PTSD."  However, Locklear noted that, although Gregory stated he was guarded with people, he was not guarded with her and that he was "pleasant and motivated to improve his quality of life and be happy."

In September 2019, Gregory was examined by Dr. Keith Wood, whose procedure notes indicated the following.  Gregory was generally open and cooperative but became closed and guarded when speaking about his imprisonment.  He was alert and oriented; he had clear speech with a normal rate and tone; he had an anxious affect and an anxious and depressed mood; he had tight

associations, linear thinking, and avoidant thoughts; he was not hallucinating, but he was having re-experiences, "more so when not being busy;" his attention and memory were within normal limits; and he saw himself as adjusting to being out of prison. After the fifteen-minute examination, Dr. Wood diagnosed Gregory as having PTSD and depression. Dr. Wood planned to refer Gregory for individual therapy.

Later that month, Gregory was examined by physician's assistant Britnay Ferguson, whose procedure notes indicated the following. Gregory reported that he was working for a mobile pressure washing company seven days a week, for approximately sixty-six hours weekly. Gregory stated that he slept in between tasks and rarely slept at home, which he attributed to not feeling comfortable sleeping when alone. He reported having "great" energy since his release from prison and denied irritability. Ferguson's mental evaluation indicated that Gregory's appearance was groomed; his behavior was normal and pleasant; his speech was normal; his mood and affect were euthymic and full; his associations were tight; his thought processes were future-oriented, linear, goal-directed, and well-organized; and he did not have any apparent hallucinations, paranoia, delusions, or obsessions. Additionally, his judgment and memory were intact; he was oriented to person, place, time, and situation; and his attention and concentration were within normal limits. Ferguson prescribed Zoloft.

In November 2019, Ferguson again examined Gregory. Gregory reported that he was fired from his job the previous week because of multiple required meetings with his parole officer. His mental status evaluation was the same as the September examination.

Gregory's mother completed a function report in November 2019 that indicated Gregory's disability had the following negative effects. He was not alert to danger and had intense emotional and physical reactions. He could not "socially communicate" and had difficulty sleeping. He was not good at following instructions, and he had a short attention span. Although he could count change, Gregory could not pay bills, handle a savings account, or use a checkbook. However, Gregory had no issues with personal care, and he read every day.

Gregory also completed his own function report in December 2019, in which he self-reported the following. He did not communicate well with others. He was irritable, tended to be easily startled, and unable to control his emotions and outbursts. He did not engage in social activities, did not get along with authority figures, and had paranoia and anxiety around people. However, he simultaneously indicated that he had no problems getting along with family, friends, neighbors, or others. He was also able to take care of his son, go to the grocery store, do laundry, prepare soups, drive, and shop in store and by phone. He was taking medication for drowsiness, dizziness, migraines, and headaches.

In February 2020, Gregory was seen by licensed professional counselor Jacyln Hallums, whose procedure notes indicated the following. Gregory reported difficulty sleeping, poor appetite, difficulty concentrating, racing thoughts, feelings of paranoia, and excessive worrying that he was hearing sounds at night. He stated that he was having nightmares and flashbacks almost nightly. However, Gregory's mental evaluation was nearly identical to his most recent one from November 2019, aside from his mood, which was calm. Gregory also reported that he felt "a little bit more balanced since starting treatment."

Gregory was again seen by Ferguson in March 2020, and her procedure notes indicated the following. Ferguson did not increase Gregory's Zoloft dosage because he was "[f]eeling good on 50mg," which he attributed to therapy and having more time to adjust being out of prison. He denied having any "bothersome" side effects of PTSD, stating, "I think what has really happened is I[ have] gotten good at patience." Gregory provided an example of successfully navigating a stressful encounter, and he indicated he was interested in tapering off of Zoloft within a year of when he started taking it. He was negative for agitation, behavioral problems, confusion, decreased concentration, dysphoric mood, hallucinations, self-injury, sleep disturbance, and suicidal ideas. Gregory was not nervous, anxious, or hyperactive. His mental status evaluation was nearly identical to his most recent one from February 2020, aside from his mood, which was euthymic.

Gregory was evaluated by nurse practitioner Caletha Carter in August 2020, and her procedure notes indicated the following.[2] Gregory reported increased depression and anxiety because of the pandemic, stated that he had not been sleeping well due to nightmares and flashbacks of his prison-related trauma, and indicated that he was stressed about his upcoming ALJ hearing. His mental status evaluation was nearly identical to his most recent one from March 2020, aside from his mood, which was dysphoric. Carter increased Gregory's Zoloft dosage to 100 milligrams and prescribed him Prazosin for his nightmares and flashbacks.

### B.    Agency Proceedings

In January 2020, an examiner issued the initial Disability Determination Explanation ("DDE"), which concluded that Gregory was not disabled. The examiner reasoned that Gregory's claimed PTSD did not meet the B or C criteria for the "12.15 Trauma and Stressor-Related Disorders" listing.[3] The DDE also

---

[2] Gregory was evaluated virtually due to COVID-19 restrictions.

[3] Listing 12.15 is the listing for Trauma and Stressor-Related Disorders. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. As outlined below, in order to satisfy the severity requirement of Listing 12.15, claimants must be able to show that their medically determinable impairment satisfies either the paragraph B or paragraph C criteria. *See id.*

Under paragraph B, Listing 12.15 may be met by showing one extreme or two marked limitations in the following areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with

noted that Gregory was able to complete familiar tasks, sustain concentration for the completion of important tasks, and relate adequately in an appropriate manner. Thus, the examiner concluded that Gregory's impairment was not severe and did "not significantly limit [Gregory's] physical or mental ability to do basic work activities."

In May 2020, an examiner issued the reconsidered DDE at Gregory's request, which again concluded that Gregory was not disabled.

At the ALJ hearing in October 2020, Gregory's counsel[4] argued that Gregory lacked the basic mental ability to maintain unskilled work, that he had difficulty integrating with others, and that he "should be deemed less than sedentary."[5]

---

others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.*

Under paragraph C, Listing 12.15 may be met by showing that the impairment is "serious and persistent," has lasted for over two years, and that both: (1) medical treatment, therapy, support, or a highly structured setting diminished the symptoms and signs of the disorder; and (2) the claimant has the minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life. *Id.*

[4] While Gregory was *pro se* when submitting his initial application and is *pro se* on appeal, he was represented during his ALJ hearing.

[5] A claimant's RFC to perform work is determined to be at one of the following "various functional levels": "sedentary, light, medium, heavy, [or] very heavy." 20 C.F.R. Pt. 404, Subpt. P, App. 2. This RFC is taken into

Gregory then testified as follows.  He did not get along well with others.  He had headaches "every other day, for two or three days," as well as bad mood swings.  He was "never aware" and was "always in paranoia."  Panic attacks and nightmares prevented him from sleeping well.  The combination of his migraine and mental health issues interfered with his ability to go to work because they affected his sleep and ability to report to work.  Ultimately, for these reasons, he asserted that he could not handle a 40-hour workweek.

However, a vocational expert testified that Gregory could still perform his past work as a dump truck driver or pressure washer.  The vocational expert also testified that several unskilled jobs existed in the national economy in significant numbers for a hypothetical person with Gregory's limitations.[6]

Following the hearing, the ALJ found that Gregory was not disabled and made the following findings.  Gregory had not engaged in substantial gainful activity since his application date. He had the following severe impairments: headaches, PTSD, and

---

account in an ALJ's determination into a claimant's "ability to engage in substantial gainful activity."  *Id.*

[6] Specifically, the vocational expert testified that:

> At the medium unskilled occupational base . . . there's the position of a cleaner . . . . At light, there's the position of a sorter . . . . And sedentary, there's the position of a document preparer . . . .

"affective and/or anxiety disorders." However, Gregory did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments— specifically, the severity of his impairments did not meet or medically equal the Listing 12.15 criteria for two reasons. First, the ALJ held that Gregory's impairments did not satisfy the B criteria because (1) Gregory only had a mild limitation in understanding, remembering, or applying information; (2) he only had a moderate limitation in interacting with others; (3) he only had a mild limitation in concentrating, persisting, or maintain pace; and (4) he only had a mild limitation in adapting or managing himself. Second, the ALJ held that the evidence failed to satisfy the C criteria because there was "no evidence of both years of medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that [was] ongoing and that diminishe[d] the symptoms and signs of [Gregory's] mental disorder; and marginal adjustment, where [Gregory] showed minimal capacity to adapt to changes in the environment or to demands" that were not already a part of his life.

The ALJ further determined that Gregory had the RFC to perform medium work where he "lifts or carries 50 pounds occasionally and 25 pounds frequently, stands or walks for six of eight hours during the workday, and sits for six of eight hours during the workday. [Gregory] can have no public contact work, and no more than occasionally contact with supervisors and/or co-employees."

In assessing his RFC, the ALJ acknowledged Gregory's testimony that he had frequent headaches but noted that there was no evidence of any hospitalization for migraines and that, in April 2019, he was assessed with a chronic migraine, but that testing did not show any physical abnormalities.

The ALJ then elaborated on the B criteria as they related to the mental component of Gregory's RFC.  First, the ALJ stated that Gregory had only mild limitations in understanding, remembering, or applying information because he understood and responded appropriately during the hearing; he stated in his function report that he drove, shopped in stores and by phone and had the ability to count change; he presented as coherent in April 2019; he showed intact memory in September 2019, and he had an intact memory in November 2019.  Second, the ALJ determined that Gregory had moderate limitations in interacting with others because, although he testified to paranoia and a constant irate mood and foul moods around people and denied social activities in his function report, he also indicated in his function report that he had no problems getting along with family, friends, neighbors, or others; he had a normal mood and affect in April 2019; he had a euthymic mood, cooperative behavior, and full affect in July 2019; he began therapy for difficulty handling groups and dealing with past trauma in September 2019; he was generally open and cooperative aside from discussing his imprisonment; he reported great energy and showed a euthymic mood with full affect in another September 2019 treatment session; he showed a euthymic mood in November 2019

despite having been fired from his job; he was cooperative in February 2020; he had a euthymic mood and full affect in March 2020; and he had a full range of mood and affect in August 2020. Third, the ALJ concluded that Gregory had mild limitations in his ability to concentrate, persist, or maintain pace because he was able to concentrate and follow along with the hearing; he was alert and oriented in April 2019; he was oriented in July 2019; he had normal attention and concentration in September 2019; he was oriented and had normal attention and concentration in November 2019 and March 2020; and he was oriented in August 2020. Fourth, the ALJ stated that Gregory had mild limitations in his ability to adapt and manage himself because he reported preparing soups, doing laundry, driving, and shopping in his function report and had shown considerable abilities in obtaining employment after a long incarceration.

Next, the ALJ found that Gregory's impairments could reasonably be expected to cause his symptoms, but concluded that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the record evidence. The ALJ reasoned that he had an inconsistent work history prior to his onset date, so factors other than severe impairments, including his incarceration history, may have prevented him from working. The ALJ further stated that he worked and earned close to the threshold for substantial gainful activity in 2019 and that he stated that he was fired from his last job due to required meetings with his parole officer and did not quit

because of his impairments. The ALJ noted again that there was no evidence of hospitalizations for migraines and that, importantly, Gregory's mental status examinations generally showed normal attention, full orientation, and normal moods. The ALJ added that Gregory was able to perform daily life activities.

Gregory requested a review of the ALJ's decision, which the Appeals Council denied.

### C.    District Court Proceedings

Proceeding *pro se*, Gregory filed an amended complaint in the district court requesting review of the ALJ's denial of SSI. Gregory submitted a brief in support of his complaint where he appeared to argue that substantial evidence did not support the ALJ's finding that his PTSD did not satisfy the criteria for Listing 12.15 and that the ALJ failed to properly weigh or credit (1) Dr. Corey's assessment; (2) Locklear's procedure notes; (3) Dr. Malmad's "medical opinion;" (4) Ferguson's procedure notes; (5) Dr. Wood's "opinion" that Gregory had PTSD; and (6) Gregory's symptom testimony.

The magistrate judge affirmed the ALJ's decision.[7] First, the magistrate judge reasoned that substantial evidence supported the ALJ's findings that Gregory did not meet the B or C criteria of Listing 12.15. Second, the magistrate judge stated that, although the ALJ credited the various diagnoses set forth in the treatment

---

[7] The parties consented to the magistrate judge's jurisdiction.

notes, the records from Gregory's medical providers did little more than document his conditions and did not indicate what he could or could not do despite his impairments and symptoms. Third, the magistrate judge concluded that the ALJ properly discredited Gregory's claim of disabling migraines and mental health symptoms based on objective medical evidence and Gregory's testimony regarding his daily activities and properly partially credited his assertion that he could not interact with others.

Gregory timely appealed.

## II.    Discussion

When an ALJ denies benefits and the Appeals Council denies review, we review the ALJ's decision as the Commissioner's final decision. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). We review the legal principles underpinning the decision *de novo*, but "we review the resulting decision only to determine whether it is supported by substantial evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

Under the substantial evidence standard, we look to the existing administrative record and ask whether it contains sufficient evidence to support the ALJ's factual determinations. *Biestek v. Berryhill*, 139 S. Ct 1148, 1154 (2019). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations omitted).

Importantly, "[w]e may not decide the facts anew, reweigh the evidence or substitute our judgment" for that of the ALJ. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1186 (11th Cir. 2001). Rather, so long as it is supported by substantial evidence, we defer to the ALJ's decision even if the evidence may preponderate against it. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).

On appeal, Gregory presents two claims as to why the denial of SSI was improper. First, Gregory argues that there was not substantial evidence to support the ALJ's finding that he did not meet or equal Listing 12.15. Second, he appears to argue that there was not substantial evidence to support the ALJ's RFC determination.[8]

A. *Whether substantial evidence supported the ALJ's finding that Gregory did not meet or equal Listing 12.15*

A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

---

[8] In his reply brief, Gregory appears to contend, for the first time on appeal, that the ALJ placed too much weight on his ability to perform daily activities in determining whether he was disabled. Because he raises this argument for the first time in his reply brief, we do not consider it. *See Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003) ("Because [appellant] raises [his] argument for the first time in his reply brief, it is not properly before us.").

which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The mere diagnosis of a medical impairment is insufficient to establish a disability, as it does not reveal the extent to which the impairment limits the claimant's ability to work. *Moore*, 405 F.3d at 1213 n.6. The ALJ need not discuss every piece of evidence in its decision. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

The social security regulations outline a five-step process for disability determinations: (1) whether claimant is engaged in substantial gainful activity; (2) if not, whether claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals the medical listings; (4) if not, whether claimant can perform his past relevant work in light of his RFC; and (5) if not, whether, based on his age, education, and work experience, claimant can perform other work available in the national economy. *Winschel*, 631 F.3d at 1178.

The listings of impairments, as relevant to step three, describe "impairments that [the agency] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). A claimant bears the burden of showing his impairments meet a listing. *See Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).

The severity requirement for Listing 12.15—the listing for Trauma and Stressor-Related Disorders—may be met by satisfying

the criteria under either paragraph B or paragraph C.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Under paragraph B, Listing 12.15 may be met by showing one extreme or two marked limitations in the following areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  *Id.*

Under paragraph C, Listing 12.15 may be met by showing that the impairment is "serious and persistent," has lasted for over two years, and that both: (1) medical treatment, therapy, support, or a highly structured setting diminished the symptoms and signs of the disorder; and (2) the claimant has the minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life.  *Id.*

A mild limitation means that the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited."  *Id.* § 12.00(F)(2)(b).  A moderate limitation means that the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair."  *Id.* § 12.00(F)(2)(c).  A marked limitation means that the claimant's functioning as described above is "seriously limited," while an extreme limitation is when the claimant is "not able to function."  *Id.* § 12.00(F)(2)(d), (e).

Here, substantial evidence supported the ALJ's finding that Gregory did not satisfy the B or C criteria of Listing 12.15.  As to the first B criterion, Gregory's mental status evaluations

consistently indicated that Gregory's limitations in understanding, remembering, or applying information were mild, if not arguably non-existent.

Second, the evidence indicated that Gregory's limitations in interacting with others were moderate. Although he testified that he did not get along well with others, had bad mood swings, and got easily frustrated and angry, his providers frequently noted his normal mood, affect, and cooperative behavior. Gregory also indicated in his function report that he did not have any problems getting along with family, friends, neighbors, or others.

Third, Gregory's mental status evaluations consistently indicated that his limitations in concentrating, persisting, or maintaining pace were mild, if not arguably nonexistent.

Fourth, the evidence indicated that Gregory's limitations in adapting or managing himself were mild, if not arguably nonexistent. In his function report, he stated that he prepared soups, did laundry, drove, took care of his son, and went shopping. Further, he worked as a pressure washer for 66 hours a week for a period of time and was only fired due to the competing demands of his parole meetings.

Further, the evidence also supported the ALJ's finding that Gregory did not satisfy the C criteria of Listing 12.15. At the time of his ALJ diagnosis, he had only received his PTSD diagnosis a little more than a year prior—clearly less time than the two-year window required to satisfy the first C criterion. More importantly,

the evidence indicated that Gregory had the ability to adapt to environmental changes and new demands, as his mental status evaluation following the loss of his job was the same as his prior evaluation.  In fact, Gregory used his job loss as an opportunity to pursue therapy, which he had been unable to do previously because of his job's demanding hours.

### B.    Whether substantial evidence supported the ALJ's RFC determination

At steps four and five of the sequential process, the ALJ must determine whether the claimant has the RFC to perform his past relevant work and, if not, any other work.    20 C.F.R. § 404.1520(a)(4)(iv)-(v).  RFC is an assessment of a claimant's ability to do work despite his impairments.  *Id.* § 404.1545(a)(1).   In formulating an RFC, the ALJ considers a claimant's "ability to meet the physical, mental, sensory, and other requirements of work."  *Id.* § 404.1545(a)(4).  The ALJ examines all relevant medical and other evidence,[9] including "any statements about what [the claimant] can still do that have been provided by medical sources" and

---

[9] A medical opinion is a statement from a medical source about what a claimant can still do despite his impairments and whether the claimant has one or more impairment-related limitations or restrictions in, among other abilities, the ability to perform mental demands of work activities, such as understanding, remembering, maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting.  20 C.F.R. § 416.913(a)(2).

"descriptions and observations" by the claimant and others of his limitations. *Id.* § 404.1545(a)(3).

To the extent Gregory argues to the contrary in his initial brief, we hold that substantial evidence supported the ALJ's RFC determination that Gregory had the RFC to perform medium work. The ALJ acknowledged that Gregory had frequent headaches and migraines but correctly noted that the record did not contain any evidence of hospitalization for migraines. The ALJ also acknowledged that Gregory's mental status examinations generally showed that he had normal attention, full orientation, and normal moods and was able to perform the full activities of daily living. Further, the ALJ pointed to Gregory's work history, where he was employed in gainful activity and was not fired and did not quit due to an inability to work, only for conflicts with his required parole meetings.

The ALJ was correct—Gregory's medical examinations, combined with his work history and his own testimony about his ability to perform daily life activities—contradicted his statements concerning the limiting effects of his impairments and, as such, the RFC determination was supported by substantial evidence.

### III.    Conclusion

Because substantial evidence supported the ALJ's finding that Gregory's PTSD did not meet or equal the requirements of Listing 12.15, and because substantial evidence supported the ALJ's RFC determination, we affirm.

AFFIRMED.